UNITED STATES of America,
Plaintiff-Appellee,

v.

Gregory FOSTER, Johnnie Lee Gibson, Billy Jackson, Ronald H. Wilson, Defendants-Appellants.

Nos. 81–1765, 81–1779, 81–1778 and 82–1057.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1982.

Decided July 26, 1983.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 13, 1983.

874

Judith S. Feigin, Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Judith S. Feigin, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Michael Pancer, San Diego, Cal., for Gregory Foster.

Christopher Schatz, Sheela, Lightner, Hughes, Castro & Walsh, San Diego, Cal., for Johnnie Lee Gibson.

George Hunt, San Diego, Cal., for Billy Jackson.

Victor S. Eriksen, San Diego, Cal., for Ronald H. Wilson.

Before ROBB,* SCHROEDER and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Appellants Gregory Foster, Johnnie Gibson, Billy Jackson, and Ronald Wilson were each found guilty of conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. In addition, appellant Foster was convicted of twenty counts of possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); appellants Jackson and Wilson were found guilty of one count of possession of heroin with intent to distribute; and appellant Gibson was found guilty of two

counts of possession of heroin with intent to distribute, all in violation of 21 U.S.C. § 841(a)(1). We affirm the convictions on all counts.

Appellants have raised numerous issues on this appeal which we discuss below.

## I.

## SUFFICIENCY OF THE EVIDENCE

### A. Conspiracy

■ Gibson, Wilson, and Jackson contend that the evidence was insufficient to establish that they participated in the conspiracy charged in the indictment.

When reviewing the sufficiency of the evidence to support a criminal conviction, the critical inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

We must determine whether the trier of fact could reasonably arrive at its conclusion. All reasonable inferences must be drawn in favor of the government, and circumstantial evidence is sufficient to sustain a conviction. *United States v. Fleishman,* 684 F.2d 1329, 1340 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982).

In reviewing the sufficiency of the evidence, we must first determine whether the charged conspiracy was proved.

The government produced evidence at trial which showed that Foster was the head of a group of persons who were engaged in the illegal distribution and sale of heroin in the San Diego area. The organization operated in the following manner. The heroin was sold in the streets by pushers. When a customer was obtained for a supply of heroin, the pusher would telephone an answer-

* Hon. Roger Robb, United States Circuit Judge for the District of Columbia Circuit, sitting by designation.

ing service number and leave a message for his supplier. The supplier in turn would be contacted through his beeper. The supplier would obtain the telephone number of the pusher and determine the amount of heroin necessary to fill the order. This amount would then be delivered to the pusher. Foster and others obtained and packaged the heroin for such distribution and sale. The heroin was cut with dextrose and placed in balloons which were placed in plastic bags. Each plastic bag contained eleven balloons. The wholesale price to the pusher for eleven balloons was $195.00. The pusher could then sell the heroin at $25.00 for each balloon. The pusher thus realized a profit of $80.00 for each package of eleven balloons sold.

The foregoing evidence is clearly sufficient to prove the existence of the conspiracy charged in the indictment.

■ We next proceed to analyze the evidence offered by the government to connect Gibson, Wilson, and Jackson.

1. Gibson was linked to the Foster enterprise by a substantial amount of evidence. Minyon Logan testified that Gibson gave her a beeper and that on numerous occasions she received packages of heroin from him to sell. Logan's ledger contained many references to drug transactions involving Gibson. Her ledger also contained many names of persons given to her by Gibson as potential "runners" (pushers). Further, she testified that she observed Foster and Gibson, together, cutting and filling balloons.

A beeper was found during the search of Gibson's residence. Invoices for the beeper showing Gibson's name were also discovered. Gibson was also linked to the Foster organization through the controlled heroin purchase made by Harvey Callier and Marco Banks, on September 25, 1979. This purchase involved the use of beepers. Gibson was connected to the purchase because

the delivery of the heroin was made in a car registered to him.[1]

### 2. *Wilson*

Dixie Boyles testified that she made several heroin purchases directly from Wilson, including one purchase on May 8, 1980 involving two bags of heroin.

Wilson's residence was searched on May 8, 1981. A traffic ticket was discovered during the search. It was received by Wilson while he was driving a car registered to Foster. Wilson's personal phonebook contained the names Gibson, Turner, and the initials "F.A." The evidence showed that Turner and Fred Arnold were members of the Foster enterprise.

The evidence also showed that Wilson had rented a beeper from the same firm used by other members of the Foster group. Wilson was shown to have received numerous calls on the beeper.[2]

### 3. *Jackson*

On December 13, 1979, Harvey Callier purchased two balloons of heroin from Jackson. This transaction was recorded. Jackson's statements during the course of the transaction showed familiarity with the Foster organization. Jackson told Callier that Greg (Foster) had quit and that neither he nor his "lieutenants" had any drugs. Moreover, Jackson referred to the recent arrest of two members of the organization. He stated that the arrests had scared Foster and that he was going to lay low for awhile. Evidence was introduced that the initials "B.J." were found on pieces of paper at the homes of Foster, Fulford and Cordova. Fulford and Cordova were heavily involved in the Foster organization.

Logan stated that Gibson had given her the name of "B.J." as a potential runner. This was corroborated by the fact that "B.J." was written in her ledger. There was evidence in the record that Jackson was known by the initials B.J.

---

1. No identification was made of the person or persons within Gibson's car.

2. 154 calls were the maximum number of calls allowed without incurring additional charges. In October 1979 Wilson received 359 calls. In December 1979 he received 261 calls.

"Once the existence of a conspiracy is shown, 'evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the *connection is slight,* is sufficient to convict him with knowing participation in the conspiracy.'" *United States v. Fleishman,* 684 F.2d at 1340–41 (quoting *United States v. Dunn,* 564 F.2d 348, 357 (9th Cir.1977) (emphasis in original)).

We are persuaded from a review of the entire record and the specific evidence summarized above that there was ample evidence of more than a slight connection between Gibson, Wilson and Jackson to the conspiracy.

### B. *Substantive Counts*

■ Wilson challenges his conviction on Count Thirteen for possession of two balloons of heroin on May 8, 1980 with intent to distribute. Wilson was charged in this count with a sale of heroin made to Boyles. Boyles' uncorroborated testimony was heavily impeached by prior inconsistent statements.

Boyles' testimony was not inherently implausible. Her testimony was sufficient to support the conviction. Because a witness' credibility is a matter for the jury to resolve, there was sufficient evidence to support the conviction on the substantive count. *United States v. Rojas,* 554 F.2d 938, 943 (9th Cir.1977).

■ Jackson challenges his conviction on Count Seven for possession of two balloons of heroin on December 13, 1979, with intent to distribute. Jackson contends that there is no proof that the drug purchased was in fact heroin. We disagree.

Agent Ashcraft testified that the two balloons sold by Jackson on that date were later determined to be heroin.

The above testimony is arguably hearsay. Jackson, however, did not object to its admission.

Thus, the general rule applies that "where there is no objection to hearsay evidence, the jury may consider it for whatever value it may have; such evidence is to be given its natural probative effect as if it were in law admissible." *United States v. Johnson,* 577 F.2d 1304, 1312 (5th Cir.1978); *United States v. Bey,* 526 F.2d 851, 855 (5th Cir.1976), *cert. denied,* 426 U.S. 937, 96 S.Ct. 2653, 49 L.Ed.2d 389 (1976).

It is also possible that Ashcraft was testifying as to his own opinion based on his prior education and training, field observations, and a chemical analysis of the contents of the balloons.

It is true that no foundation for such an opinion appears in the record. There was no objection on this ground. An objection would have afforded the government an opportunity to present whatever evidence was available to lay a foundation for the admission of the contents of the balloons.

It is our view that sufficient evidence was introduced to support Jackson's conviction on the substantive count.

### II.

### SUFFICIENCY OF THE AFFIDAVIT

On May 8, 1981, government agents executed a series of search warrants at the residences of the defendants. The warrants were based on allegations contained in a single affidavit presented to the magistrate by Agent Williams.

Conceding that the affidavit contained sufficient information to justify their arrest, Foster and Gibson instead contend that the affidavit did not establish probable cause to search their residences. Foster additionally argues that the trial court should have granted his motion for a hearing under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), because Agent Williams intentionally omitted from his affidavit allegedly exculpatory information.

The trial court rejected the probable cause challenges before trial. We review the court's determination that the affidavit was sufficient to provide probable cause to issue the warrant under the clearly erroneous standard. *See United States v. O'Con-*

*nor,* 658 F.2d 688, 690–91 & n. 5 (9th Cir. 1981).

The appellants are correct that probable cause to search a residence does not automatically follow from probable cause to believe a suspect guilty of a crime. *United States v. Valenzuela,* 596 F.2d 824, 828 (9th Cir.1979), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979). To justify the search of a residence, the facts supporting the warrant must show probable cause to believe that the evidence sought is presently in the place to be searched. *Id.*

The affidavit in support of a warrant is to be given a common sense and realistic interpretation. *United States v. Chesher,* 678 F.2d 1353, 1359 (9th Cir.1982). Such a reading may support an inference of probable cause "to believe that criminal objects are located in a particular place to which they have not been tied by direct evidence." *Valenzuela,* 596 F.2d at 828.

### A. Foster

Read as a whole, the affidavit in this case suffices to justify the search of Foster's residence. The affidavit disclosed that Foster headed a major heroin distribution ring. On several occasions during the investigation, narcotics were seen at Foster's residence. One informant had overheard Foster admit that he maintained phony records to deceive the Internal Revenue Service (hereinafter IRS).

Moreover, Williams stated in the affidavit that based on his eleven years' experience as a narcotics agent, he believed that evidence of the defendants' drug dealings would be found at defendants' residences. Williams' opinion was an important factor to be considered in the magistrate's determination whether probable cause existed. *See United States v. Johnson,* 660 F.2d 749, 753 (9th Cir.1981), *cert. denied,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982); *Valenzuela,* 596 F.2d at 828–29; *cf. United States v. Dubrofsky,* 581 F.2d 208, 213 (9th Cir.1978), *cert. denied,* 454 U.S. 950, 102 S.Ct. 489, 70 L.Ed.2d 257 (1981) ("[h]eroin importers commonly have heroin and related paraphernalia where they live"). In

these circumstances, the trial court did not err in finding the affidavit sufficient to permit an inference that evidence would be found in Foster's residence.

Foster argues that the information contained in the affidavit was too "stale" to support a finding of probable cause. He points out that the most recent of the affidavit's references to his residence concerns a February 1980 drug sale.

The passage of time is not necessarily a controlling factor in determining the existence of probable cause. The court should also evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought. *United States v. Reid,* 634 F.2d 469, 473 (9th Cir.1980), *cert. denied,* 454 U.S. 829, 102 S.Ct. 123, 70 L.Ed.2d 105 (1981). Tested under this standard, Foster's contention fails.

First, contrary to Foster's argument, the affidavit linked Foster to a heroin sale in February 1981, only three months before the warrant was executed. *Cf. id.* 634 F.2d at 472–73 (probable cause to believe that documents would be found in May 1978 though events described in affidavit had occurred in February and March 1977); *United States v. DiMuro,* 540 F.2d 503, 515–16 (1st Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977) (information in affidavit some four months old; finding of probable cause upheld).

Second, the affidavit sought evidence of a large-scale, ongoing criminal organization, not evidence relating to a completed criminal act. *See United States v. Huberts,* 637 F.2d 630, 638 (9th Cir.1980), *cert. denied,* 451 U.S. 975, 101 S.Ct. 2058, 68 L.Ed.2d 356 (1981). Foster admitted that he maintained bogus records to deceive the IRS, suggesting that he was in the business of selling the heroin linked to him but did not wish to disclose his income from illegal transactions. This statement supports an inference that the criminal conduct was of a continuing nature. *Id.* Based on this information, the trial court could properly find probable

cause to search the Foster residence for evidence of such activity.

■ Foster also contends that the trial court erred in denying his motion for *Franks'* hearing because Agent Williams intentionally omitted from his affidavit reference to three tape-recorded conversations suggesting that Foster had retired from the drug selling business. We have reviewed the affidavit carefully, and find that only one of the statements—Foster's January 28, 1980 assertion to Logan that Foster had "quit"—could arguably have affected the finding of probable cause to search Foster's residence.

In *Franks,* the Supreme Court held that when a defendant makes a substantial showing that an affidavit contains a false statement, knowingly or recklessly made and necessary to the finding of probable cause, a hearing must be held at the defendant's request. If the defendant's contention is established by a preponderance of evidence, and after deletion of the false material the affidavit is insufficient to establish probable cause, the search warrant must be set aside and the fruits of the search suppressed. 438 U.S. at 155–56, 98 S.Ct. at 2676–2677; *United States v. Maher,* 645 F.2d 780, 782 (9th Cir.1981) (per curiam) (*Franks* applies to allegedly material omissions; *sub silentio); see also United States v. Willis,* 647 F.2d 54, 58–59 (9th Cir.1981).

Here, the failure to disclose Foster's exculpatory statement was not prejudicial. The affidavit links Foster to a heroin sale that occurred on February 26, 1981. Thus even had the magistrate known of Foster's statement, he could reasonably have determined that there was probable cause to search Foster's residence in May 1981.

### B. *Gibson*

■ Gibson attacks the warrant as lacking in information to establish probable cause and as "stale". We disagree.

Five informants identified Gibson as a lieutenant in Foster's organization. William's affidavit details three sales by Gibson and two others in which a car registered to Gibson was used. Although the most recent sale in which Gibson himself participated occurred in May 1980, business records showed that Gibson had rented a beeper like those used in organization and had made payments on it through March 1981.

When considered together with William's opinion that evidence of Gibson's drug dealings, including drug paraphernalia, would be found at Gibson's residence, this information is sufficient to uphold the trial court's determination of probable cause. *See United States v. Dubrofsky,* 581 F.2d at 213 (warrant may be upheld when the nexus between the items to be seized and the place to be searched rests upon the type of crime, nature of the items, and usual inferences where a criminal would likely hide contraband).

■ Gibson urges, however, that no factual allegations in the affidavit link him to the Oak Park residence. The affidavit concludes, in summary fashion, that the address is Gibson's. But the affidavit also states that the San Diego Gas & Electric Company subscriber at the address is Gibson's wife, Lera L. Gibson. The magistrate need not be convinced beyond a reasonable doubt that the facts in an affidavit are true. We find that the magistrate properly relied on the gas company records as justifying an inference that Gibson resided there because his wife did.

■ Finally, Gibson's challenge to the warrant on grounds of "staleness" is without merit. The affidavit disclosed that Gibson had made a payment on the rented beeper in March 1981, two months before the search warrant was executed. Much of what we have said concerning Foster's "staleness" argument applies with equal force here. The continuing nature of the drug dealing organization fully justified a search of Gibson's residence for evidence of such dealing.

### III.

### ALLEGED PROSECUTORIAL MISCONDUCT BEFORE THE GRAND JURY

■ Foster argues that prosecutorial misconduct before the grand jury constitut-

ed an impermissible infringement on the exercise of the grand jury's independent judgment. Foster cites six incidents of alleged misconduct, which, he urges, together required dismissal of the indictment.

The record does not demonstrate such misconduct. Foster did not designate as part of the record on appeal portions of the grand jury proceeding transcripts on which he relies. Foster has therefore failed in his burden of establishing error "not by assertion, but by the record." *L & E Co. v. U.S.A. ex rel. Kaiser Gypsum Co.,* 351 F.2d 880, 883 (9th Cir.1965).

## IV.

## ADMISSIBILITY OF COCONSPIRATOR HEARSAY STATEMENTS

Foster and Gibson contend that the district court erred in admitting certain extrajudicial statements offered by the government under the coconspirator exception to the federal rules of evidence. *See* Fed.R. Evid. 801(d)(2)(E). The appellants urge that the statements failed to meet the foundational requirements of Rule 801(d)(2)(E) and that admission of the statements violated their rights under the confrontation clause.

### A. *Foster*

Over Foster's objection, Agent Ashcraft testified concerning statements made by defendant Jackson on two occasions. The first statement occurred during a heroin sale to Callier. Jackson told Callier that "Greg" (Foster) had quit selling drugs; that Foster's lieutenants had no drugs; and that Foster was scared over the arrest of other conspirators. In the second statement, Jackson told Gentry that "Greg" had stopped selling heroin because someone had taken a large sack of money from him. Jackson also related that Foster planned to renew selling heroin as soon as he recovered the money.

■ It was error to admit these statements. Hearsay statements are admissible under the coconspirator exception only if made in "furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E); *United States v. Perez,* 658 F.2d 654, 658 (9th Cir. 1981). Both statements by Jackson were mere narrative declarations insufficient to satisfy the strict requirements of the rule. *See United States v. Fielding,* 645 F.2d 719, 726 (9th Cir.1981).

■ We do not agree with the government that the statement to Gentry must be construed as an attempt by Jackson to nurture Gentry's continued interest in the organization by predicting that Foster would soon be selling heroin again. Unless the declarant is " 'seeking to induce [the listener] to deal with the conspirators or in any other way to cooperate or assist in achieving the conspirators' common objective,' " the declaration is inadmissible. *Id.,* quoting *United States v. Moore,* 522 F.2d 1068, 1077 (9th Cir.1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976). When a declarant " 'seek[s] to induce [the listener] to deal with the conspirators or in any other way to cooperate or assist in achieving the conspirators' common objective,' " the declaration may be admissible. *Id.,* quoting *United States v. Moore,* 522 F.2d 1068, 1077 (9th Cir.1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976). Statements concerning activities of the conspiracy, including future plans, also may become admissible when made with such intent. *Id.* Here, however, no intent to elicit cooperation or assistance in achieving the common scheme is evident from the statements.[3]

■ The improper admission of Jackson's statements under Rule 801(d)(2)(E) was not, in this case error of constitutional dimension. *See United States v. Castillo,* 615 F.2d 878, 883 (9th Cir.1980). Therefore, reversal is required only if it is more probable than not that the error materially affected the verdict. *United States v. Rasheed,* 663 F.2d 843, 850 (9th Cir.1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982); *United States v. Valle-Valdez,* 554 F.2d 911, 916 (9th Cir.1977). We are satisfied that the

---

**3.** We do not reach the question whether the statements might be admissible, even without intent, as in fact furthering or being likely to further the conspiratorial objectives, *see United States v. Layton,* 720 F.2d 548 at 556 n. 5 (9th Cir.1983) (leaving question open), because here the statements lacked those qualities as well as lacking intent. Intent is evident however, in a series of conversations between Callier and Hamilton, Davis and Turner, in which they referred to Foster as the head of the organization and as a supplier of heroin. Callier had approached these individuals claiming that he was having difficulty getting a steady supply of heroin and was willing to sell in the downtown area where Foster allegedly needed a distributor. The references to Foster were aimed at meeting Callier's purported need and were therefore made to induce Callier to join the conspiracy.

error was harmless. Almost every witness implicated Foster, and the evidence against him was overwhelming.

Foster also contends that his Sixth Amendment confrontation right was violated by admission of Jackson's statements.[4] We disagree.

■■■ Confrontation claims are reviewed under a two-track approach that tests the necessity and reliability of the challenged testimony. *Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–2539, 65 L.Ed.2d 597 (1980). Concerning the necessity requirement, the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it intends to offer against the defendant. *Id.* at 65, 100 S.Ct. at 2538–2539. The Supreme Court has suggested, however, that compliance with this requirement might not be mandatory when the testimony is neither "crucial" to the prosecution nor "devastating" to the defendant. *Dutton v. Evans,* 400 U.S. 74, 87, 89, 91 S.Ct. 210, 219, 220, 27 L.Ed.2d 213 (1970).

■■■ Although Foster contends that Jackson's hearsay statements were both "crucial" and "devastating", he concedes that Jackson was unavailable within the meaning of the Sixth Amendment. Accordingly, even if Jackson's statement is viewed as "crucial" and "devastating," the rule of necessity inherent in the confrontation clause can not be said to have violated in Foster's case.

■■■ The reliability of a coconspirator's statements are tested under four indicia: (1) whether the declaration contained assertions of past fact; (2) whether the declarant had personal knowledge of the identity and role of the participants in the crime; (3) whether it was possible that the declar-

ant was relying upon faulty recollection; and (4) whether the circumstances under which the statements were made provided reason to believe that the declarant had misrepresented the defendant's involvement in the crime. *Dutton v. Evans,* 400 U.S. at 88–89, 91 S.Ct. at 219–220; *United States v. Perez,* 658 F.2d at 661.

■■■ Foster challenges the admissibility of Jackson's hearsay statements only on the basis of factors (1) and (4). Although some of the statements made by Jackson referred to Foster's having previously quit the drug selling business, their introduction into evidence did not amount to a constitutional violation. All four *Dutton* elements need not be present for the proper admission of hearsay statements over a confrontation clause objection. *Id.* Moreover, there was little risk that the jury would give undue weight to such statements of past fact. *See Dutton,* 400 U.S. at 88, 91 S.Ct. at 219. Evidence that Foster had quit selling heroin could only have assisted his defense.

Foster urges that Jackson's statements to Callier included references to Foster only because Callier "erroneously" believed that Foster was Jackson's supplier, and Jackson hoped to stall Callier until he could find a supply of heroin to sell Callier. However, because Jackson believed Callier to be a potential customer, not a government agent, Jackson would have had little apparent motive to falsify Foster's role in the crime. *See United States v. Snow,* 521 F.2d 730, 735 (9th Cir.1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976).

### B. *Gibson*

■■■ Boyles testified that Sears told her that Sears' source of heroin was "Johnnie Blue" (Gibson). Gibson challenges Boyle's

---

4. It is unclear from the record whether Foster preserved this issue by a proper objection at trial. Following the Government's opening statement, at which the prosecutor read the entire Jackson/Callier conversation to the jury, Foster moved for a mistrial, raising the confrontation issue. During the government's case-in-chief, Foster again vaguely alluded to the confrontation problem that Agent Ash-

craft's testimony would present. Foster also raised several, more specific objections; all were overruled. The record does not establish, however, whether the trial judge intended to overrule a confrontation objection.

Even if the record does not establish a proper objection at trial, we review the issue under the plain error doctrine. *See United States v. Traylor,* 656 F.2d 1326, 1333 (9th Cir.1981).

testimony as incredible.[5] Credibility determinations, however, are matters for the jury. *See United States v. Brady,* 579 F.2d 1121, 1127 (9th Cir.1978), *cert. denied,* 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979).

Gibson also contends that Sears' statement was "crucial" to the prosecution and "devastating" to his defense. Because Gibson did not preserve this issue by a proper objection at trial, we review the issue under the plain error doctrine. *See* note 5, *supra.*

Gibson emphasizes that Sears' statement was highly incriminating. Even so, the prosecution's failure to produce the seemingly available witness did not render admission of the statement erroneous. The confrontation clause's rule of necessity is not absolute, and production of the declarant/witness is not required when the "utility of trial confrontation [is] remote." *Ohio v. Roberts,* 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7. In this case, Boyles also testified that she had herself purchased heroin from "Johnnie Blue." Any cross-examination of Sears regarding his statement would, therefore, have served little purpose. We find no error in the trial court's admitting Boyle's testimony.

## V.

### ADMISSIBILITY OF THE LEDGER

Over Gibson's objection, Logan's ledger was admitted into evidence under the business record exception of Fed.R.Evid. 803(6). The ledger, which contained records of drug transactions, implicated Gibson in the conspiracy. Gibson contends that the ledger was improperly admitted because the records were not kept in the course of regular-ly conducted business activity and because the entries were untrustworthy.[6]

To be admissible as a business record under Rule 803(6), the record must have been kept in the "regular course" of a business activity. *Clark v. City of Los Angeles,* 650 F.2d 1033, 1036 (9th Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 443 (1982). A record is considered as having been kept in the regular course of business when it is made pursuant to established procedures for the routine and timely making and preserving of business records, and is relied upon by the business in the performance of its functions. *Id.* 650 F.2d at 1037.

Logan testified that she kept a record of most of her large drug transactions. She stated that it was her regular practice to enter into the ledger the number of balloons that went out on a particular day and how much money she took in. The transactions were recorded contemporaneously, and Logan relied on them. This evidence was sufficient to satisfy Rule 803(6).

The fact that the ledger was an incomplete record of Gibson's drug dealings and contained several blank pages and unrelated entries did not render the ledger inadmissible. The accuracy of the remaining pages was not altered simply because Logan did not record every heroin sale that occurred. *See United States v. Baxter,* 492 F.2d 150, 165 (9th Cir.1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

Nor does the fact that the entries were made out of sequence destroy their accuracy. The entries were made at or near the time of the events described and they satisfied the regularity requirement. Their sequence was therefore irrelevant.

5. Gibson's contention based on the admissibility of statements under Fed.R.Evid. 801(d)(2)(E) relates only to the Jackson/Callier conversation described above. Gibson was never mentioned by Jackson in these statements. Thus there is no basis for Gibson's challenge that the trial court violated Rule 801(d)(2)(E).

6. This court has held that the running accounts of illicit enterprises are "business records," subject to the ordinary requirements regarding the admissibility of writings. *See United States v. Baxter,* 492 F.2d 150, 165 (9th Cir. 1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974); *Arena v. United States,* 226 F.2d 227, 234–35 (9th Cir.1955), *cert. denied,* 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830 (1956).

*United States v. McPartlin*, 595 F.2d 1321, 1348 (7th Cir.1979), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979).

■ Gibson argues that the entries were nonetheless untrustworthy. However, because Logan had to rely on the entries, there would have been little reason for her to distort or falsify them. *See id.* 595 F.2d at 1347.

## VI.

### ALLEGED PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT

During closing argument, the prosecutor reminded the jury that Agent Ashcraft had testified that one of the defendants had given the government information to support a warrant for the search of Logan's residence. He argued that none of the defense counsel had inquired of Ashcraft whether it was his client who had provided the information. The prosecutor then suggested that the defendants were "hanging together" to conceal their guilt, as they had throughout the conspiracy, and that defense counsel were acting in support of that goal. Foster's counsel objected to this line of argument.

The prosecutor may well have exceeded the wide latitude permitted counsel in closing argument. *See United States v. Parker,* 549 F.2d 1217, 1222 (9th Cir.1977), *cert. denied,* 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977). The next morning, however, defense counsel agreed to the prosecutor's offer to correct any misconception. The prosecutor then told the jury that he was referring to the defendants only and did not mean to imply that defense counsel were part of a conspiracy.

■ Improprieties in counsel's arguments to the jury do not constitute reversible error "unless they are so gross as probably to prejudice the defendant, and the

prejudice has not been neutralized by the trial judge." *Id.* In this case, the trial court left it to defense counsel to decide whether the prosecutor should correct his statement. If any prejudice to Foster resulted from the prosecutor's argument, it was neutralized by counsel's corrective statement.

## VII.

### ALLEN CHARGE

The jury acquitted defendant Henderson on the fourth day of deliberations. On the afternoon of the fifth day, the trial judge received a note requesting that one of the jurors be released because of the strain on the individual's family and job. After discussing the matter with counsel, the judge responded with a note asking the jury to continue its deliberations.

Later that afternoon the court received a second note: "Another juror wants to be released. We seem to be at a standoff, and she feels that there is no clear end in sight." The judge informed counsel that he was considering giving the jury a modified version of the *Allen* charge, prompting defense counsel to move for a mistrial.

The jury was then summoned, and the foreperson indicated that no other verdict had been reached. The judge reminded the jurors of the importance of the case and thanked them for their work. At the judge's suggestion the jury retired to consider whether it would like a day off to address the concerns expressed in the notes. When the jury returned the foreperson stated that the majority of the jurors wished to return the next day, but that a few members thought that "discussions [were] hopelessly deadlocked and no further progress [could] be made."

The court then gave the modified *Allen* charge [7] and excused the jury for the day.[8]

---

**7.** The judge instructed the jury as follows:
Ladies and Gentlemen, I am going to ask that you resume your deliberations for a further period of time in an attempt to return a verdict. As I have told you, each of you must agree in order to return a verdict. You

have the duty to consult with one another and to deliberate with a view of reaching an agreement if this can be done without violence to individual judgment.
Each juror must decide the case for himself or herself, but only after impartial considera-

Three days later an eleven-person jury returned with verdicts as to Foster, Jackson, and Gibson. *See* discussion, *infra*.

■ In reviewing the propriety of an *Allen* charge, the court must examine the instruction in its context and under all the circumstances to determine whether it had a coercive effect. *United States v. Hooten,* 662 F.2d 628, 636 (9th Cir.1981), *cert. denied,* 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982). This circuit evaluates coerciveness on the basis of (1) the form of the instruction; (2) the period of deliberation following the *Allen* charge; (3) the total time of jury deliberations; and (4) the indicia of coerciveness or pressure upon the jury. *United States v. Beattie,* 613 F.2d 762, 765–66 (9th Cir.1980), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980).

Relying on factors (3) and (4), Foster, Jackson, and Gibson contend that the *Allen* charge had a coercive effect on the jury. They emphasize that nearly all of the government's case rested on the testimony of informants, and that the charge came after two jurors had indicated their desire to be relieved of duty.

■ The total time of juror deliberation is relevant as to the coercive effect that an *Allen* charge may have had in relation to the difficulty of the task before the jury. *See United States v. Moore,* 653 F.2d 384, 390 (9th Cir.1981). Trial in this case lasted eight and one-half days; verdicts as to Foster, Jackson, and Gibson were rendered on the eighth day of deliberations. During those eight days, the jury considered numerous counts against eight defendants charged in a sophisticated drug-selling operation. In these circumstances, we cannot conclude that the *Allen* charge "coercively produced the result." *United States v. Beattie,* 613 F.2d at 766.

The appellants' emphasis on the nature of the government's proof is unavailing. The length of the deliberations can also be viewed as reflecting a proper circumspection by jurors who had to consider the credibility of several, paid government informants with criminal records.

■ Finally, we find nothing in the record indicating an indicia of coerciveness or pressure upon the jury. First, the jury in this case rendered discriminating verdicts, acquitting three codefendants after the judge read the *Allen* charge. This fact significantly weakens the appellant's argument that the jury was coerced by the *Allen* charge. Second, although the jury had twice indicated that they were deadlocked, the record does not reveal that either the jury or the judge had expressed "a sense of frustration at the jury's failure to reach a verdict." *Moore,* 653 F.2d at 390; *cf. id.* (*Allen* charge properly given after trial judge had received two notes indicating that jurors were deadlocked). Moreover, because the trial judge in this case was unaware of how the jury stood, there was no danger that the *Allen* charge would "suggest to the minority position jurors that [the judge] was speaking directly to them." *Beattie,* 613 F.2d at 766.

tion of the evidence with his or her fellow jurors. During the course of your deliberations, each of you should not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. No juror, however, should surrender his or her honest conviction as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

8. We agree with the trial judge that his earlier remarks about the importance of the case did not constitute an *Allen* charge. The judge told the jury that the case was very important for the government and for each defendant. He added that it was extremely important that "if the matter [can] be resolved under the instructions of the court, that it be resolved." These remarks did not approach an instruction "admonishing [the] jurors to reconsider their position," *United States v. Beattie,* 613 F.2d 762, 765 (9th Cir.), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980). We therefore reject the appellants' contention that the trial court gave two *Allen* instructions, triggering this circuit's rule of per se reversal in such circumstances. *See United States v. Seawell,* 550 F.2d 1159, 1163 (9th Cir.1977), *cert. denied,* 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 666 (1978).

We conclude that the trial judge did not abuse his discretion in giving the *Allen* charge. *Id.*

## VIII.
### RULE 24(c) WAIVER

During the settling of instructions, the trial court suggested that the parties stipulate to a waiver of Fed.R.Crim.P. 24(c). The judge expressed his concern that the trial had been lengthy and outlined his proposal for the substitution of any juror determined to be unable to continue: "Retain the alternates, maintain the confidentiality, use [an alternate] if good cause appears [and] insert [the alternate] in the jury room if the need arises."

On the last day of trial, defense counsel agreed to the stipulation prepared by the judge, with the modification that only the first two alternates be retained. All defendants and their counsel signed the stipulation without further discussion or objection.

During the sixth day of jury deliberations, the court received a third note from the jury (see part VII, *supra*). The foreperson informed the judge that a juror was encountering marital and business problems and wished to be released. The note indicated, however, that the rest of the jury was still deliberating and that the court should not infer that the reluctant juror was holding out one way or the other.

In the presence of all counsel, juror Perez was examined in chambers. Thereafter the court stated its intention to dismiss the juror for good cause. After denying counsels' motion for a mistrial, the court asked counsel for suggestions, referring to the Rule 24(c) waiver.

Counsel for Foster initially indicated that he wished to continue with an eleven-member jury. But when counsel for defendant Norman indicated that upon rereading Rule 24(c) he did not think the rule could be waived, counsel for Foster stated that when he agreed to waive Rule 24(c), he could not have envisioned the unusual turn of events that had occurred.

The court responded that unless the parties unanimously agreed to the proposal for an eleven-person jury, he would hold them to the stipulation. Wilson stated that he preferred to proceed with the alternate, but each of the remaining defendants personally waived his right to a twelve-person jury. See Fed.R.Crim.P. 23(b). The court then excused juror Perez.

The next day the parties agreed that because only Wilson wished to proceed with the alternate juror, the jury should be instructed, before the alternate was seated, that it should not consider Wilson's case until it had finished deliberations on the remaining defendants. The alternate would then be seated and the jurors would begin deliberation anew on the counts against Wilson. Wilson agreed to this proposal in open court, and the jurors were instructed accordingly.

The jury returned verdicts on Foster, Jackson and Gibson on the afternoon of the eighth day of deliberations. The alternate was installed the next day, and the court instructed the jury to begin deliberations anew. Wilson was found guilty on the tenth day of deliberations.

Fed.R.Crim.P. 24(c) provides in part that alternate jurors "shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties.... An alternate juror who does not replace a regular juror shall be discharged *after the jury retires to consider its verdict.*" This court has held that the provisions of the rule may be waived by stipulation. *Leser v. United States*, 358 F.2d 313, 317–318 (9th Cir.1966), *cert. dismissed*, 385 U.S. 802, 87 S.Ct. 10, 17 L.Ed.2d 49 (1966).

■ In this case, the appellants unconditionally waived the discharging of the first two alternate jurors and stipulated that, for good cause, an alternate could be substituted after deliberations had begun. Each appellant and his counsel signed the written stipulation without objection. The appellants do not contend that their waivers

were unintelligent. Thus we are loath to find that the Rule 24(c) waivers were ineffective.

The appellants urge that the trial judge coerced them into making the stipulation. *See Leser,* 358 F.2d at 317. The record, however, belies any such interpretation of the circumstances. Admittedly, the judge suggested the idea of the waiver and prepared the stipulation. Appellants and their counsel, however, fully acquiesced in the waiver, insisting on the retention of only the first two alternates.

The appellants also contend that the dramatic turn of events—the rendering of a partial verdict, the notes from jurors seeking release, indications that the jury was deadlocked, and the giving of an *Allen* charge on the fifth day of deliberations [9] —required that the court relieve them from the stipulation. In support of their argument, they cite this court's decision in *United States v. Lamb,* 529 F.2d 1153 (9th Cir. 1975) (en banc).

In *Lamb,* the court held that the trial court's failure to follow the mandatory requirements of Rule 24(c) mandated a reversal of the appellant's conviction in the circumstances. *Id.* at 1156–1157. Although *Lamb* did not involve an express waiver, the court stated in dicta that even had there been such a waiver it would not have remained effective due to the "dramatic change in circumstances" that had occurred after the jury first began to deliberate. *Id.* at 1157.[10]

We are not persuaded that the dicta in *Lamb* should be applied in this case. As we have indicated, the original Rule 24(c) waiver was valid as to each appellant. Upon dismissal of the regular juror, the court accommodated defense counsels' request that six of the defendants be permitted to proceed with eleven jurors. The court carefully instructed the jury as to their obligations concerning these deliberations. Similarly, the court followed the literal wording of the Rule 24(c) stipulation when it instructed the newly-constituted jury to begin deliberations anew as to Wilson. In these circumstances, we decline to presume that the jury failed to follow the court's instructions.[11]

Finally, the appellants have not established that they suffered any prejudice from the trial court's resolution of the substitute juror problem. Indeed, on his record such a showing presents a difficult task. Those appellants who chose to proceed with eleven jurors validly waived the provisions of both Rules 24(c) and 23(b). By his choice to have the alternate participate in the deliberation of his case, Wilson agreed to a permissible Rule 24(c) waiver twice. We conclude that the trial court did not err in refusing to grant the appellant's motion for a mistrial.[12]

## IX.

### NEW TRIAL MOTION

■ Six days after the jury returned its verdict against him, Wilson filed a motion for a new trial pursuant to Fed.R.Crim.P. 33. The trial court denied the motion on

---

9. As indicated above, the trial judge was within his discretion in giving the *Allen* charge.

10. In *Lamb,* the trial judge discharged an alternate juror but instructed her to stand by in case she were needed. During the course of the jury's deliberations, the judge received a note from a juror asking to be excused. The judge then called the alternate and asked her to return. Subsequently, the judge was informed that a verdict had been reached. He called the alternate again and told her not to return.

The judge refused to accept the verdict, however, because it was inconsistent with the instructions. He then questioned and excused the juror who had written the note. Over de-

fense counsel's objection, the alternate was recalled and joined the jury, which was instructed to begin deliberations anew. The jury returned with a guilty verdict twenty-nine minutes later. 529 F.2d at 1154–55.

11. As it had done with the regular jurors, the court admonished the two retained alternates to maintain the confidentiality of the proceedings.

12. It should be noted that the Supreme Court has approved changes in the criminal rules which would permit the district court to excuse a juror and obtain a verdict from 11 jurors without a stipulation. 51 U.S.L.W. 4501, 4509 (U.S. May 3, 1983).

the ground that Wilson had failed to satisfy the requirements for granting a new trial set forth in *United States v. Brashier,* 548 F.2d 1315, 1327 (9th Cir.1976).

Wilson argues that the court should not have applied the *Brashier* standard in evaluating his motion, but rather should have assessed his request under a rule that favors granting new trial motions based on newly discovered evidence if the request is made within seven days of the verdict and if it is in the interest of justice to do so. *See* 3 C. Wright, *Federal Practice and Procedure* § 557 (1982). We need not express any opinion on such a standard because Wilson did not argue this theory in the trial court. Wilson instead attempted to fit his motion within the *Brashier* guidelines. He does not challenge the trial court's denial of the motion under *Brashier,* and we decline to review his argument raised for the first time on appeal. *See Collins v. Thompson,* 679 F.2d 168, 171 (9th Cir.1982).

All appellants' convictions on all counts are AFFIRMED.