947 F.2d 951
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Martha Elena GOMEZ, aka Nina, Defendant-Appellant.
 No. 90-10061.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 12, 1991.
Decided Oct. 23, 1991.
As Amended Oct. 31, 1991.
As Amended on Denial of Rehearing June 2, 1992.
 
 Before JAMES R. BROWNING, FARRIS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 For two reasons, we reverse the district court's finding that there was probable cause to believe Martha Gomez was the hispanic female involved in money laundering at the Marina Green parking lot in San Francisco for the Colombian drug cartel.
 
 
 3
 First, the district court erred in relying on the surveillance logs of the DEA agents, rather than the affidavits, to establish probable cause. We have held that "a search warrant, to be valid, must be supported by an affidavit establishing probable cause. In reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit." United States v. Stanert, 762 F.2d 775, 778 (9th Cir.) (citing United States v. Taylor, 716 F.2d 701 (9th Cir.1983)), amended on other grounds, 769 F.2d 1410 (9th Cir.1985). Accord, United States v. Bertrand, 926 F.2d 838, 841 (9th Cir.1991); United States v. Rubio, 727 F.2d 786, 795 (9th Cir.1983). The information that tended to establish probable cause in the surveillance logs was not included in the four corners of the affidavits. Therefore, it was error to consider it.
 
 
 4
 Second, the three affidavits presented to the district court to support the search of 12 Marshall Way, Gomez' residence, do not establish probable cause.
 
 
 5
 The first affidavit contains a general description of the process of laundering Colombian drug money. Then, it describes the following events: on May 15, 1987, an undercover agent received instructions to wait for a telephone call indicating that the caller had something "to John from Ron." When the agent received that call on May 22, 1987, he had a conversation with an unidentified latin female who indicated she wanted to meet him. On May 26, 1987, they had another conversation in which the latin female told the agent she had money for him. The next day, May 27, 1987, the agent met the woman at the Marina Green parking lot. She identified herself as "Nina." "Nina" gave the agent a package containing $165,000, and indicated that she had more money to deliver. On June 8, 1987, the agent received another telephone call from "Nina." They agreed to meet on June 9 so "Nina" could deliver more money. On June 9, they met at the Marina Green parking lot. "Nina" arrived in a Nissan Sentra, California license number 1KLL228, opened the trunk, and gave the agent a box containing $244,430. Following that meeting, FBI agents tailed "Nina" to 77 Parkrose in Daly City, California.
 
 
 6
 The second affidavit for 77 Parkrose in Daly City identifies Gloria Raygosa, not the defendant Martha Gomez, as the money launderer. The third affidavit for 12 Marshall Way contains certain statements attributed to Gloria and Julissa Raygosa that the record demonstrates were not their statements.[1]
 
 
 7
 When the false statements are removed, see United States v. Foster, 711 F.2d 871, 879 (9th Cir.1983) (where false statements are shown by a preponderance of the evidence, they are deleted from the affidavit), the two affidavits for 77 Parkrose and 12 Marshall Way show only that: (1) the money launderer was identified as Gloria Raygosa in the affidavit for 77 Parkrose; (2) that on June 9, 1987, Raygosa went from the parking lot where the money was laundered to 77 Parkrose, and then shopped and returned at unspecified times; (3) that Gloria Raygosa's driver's license number was N5401129, and the license reveals that she was born on September 30 of an unspecified year and that she is a female, 5'4" tall weighing 130 lbs; (4) that Gloria Raygosa stated that her cousin, Martha Gomez, visited 77 Parkrose on June 9, 1987, Julissa's graduation day, and that Gloria and Martha left to shop and returned at unspecified times; and (5) Julissa confirmed that Martha Gomez had visited on June 9, 1987, and had shopped and returned, all at unspecified times.
 
 
 8
 The information in the affidavits is insufficient to establish probable cause to search 12 Marshall Way. None of it connects Martha Gomez with the hispanic woman who laundered money at the Marina Green parking lot on June 9, 1987. To the contrary, the affidavits instead recite an uncontradicted eyewitness identification by a law enforcement officer of another hispanic woman, Gloria Raygosa, as the money launderer. The second affidavit states: "On June 10, 1987, Agent Reagan identified the photograph of GLORIA RAYGOSA as being identical to the woman he met as NINA on June 9, 1987." Gloria Raygosa is described as living at 77 Parkrose, not 12 Marshall Way.
 
 
 9
 "If ... after deletion of the false material the affidavit is insufficient to establish probable cause, the search warrant must be set aside and the fruits of the search suppressed." Foster, 711 F.2d at 879.
 
 
 10
 The district court held that the false statements were not material to a determination of probable cause. Since we hold that these false statements are material, and that there is no probable cause when they are removed from the affidavit, "the defendant is entitled, under the Fourth and Fourteenth Amendments, to [her Franks] hearing." See Franks v. Delaware, 438 U.S. 154, 172 (1978). Under Franks, a court must determine whether the false statements were made deliberately or recklessly. Id. at 171-72. Because the district court held that Franks did not apply, the court did not make the express findings Franks requires. If the false statements do not violate Franks, then the defendant's motion to suppress should be denied.
 
 
 11
 REVERSED AND REMANDED.
 
 FARRIS, Circuit Judge, dissenting:
 
 12
 I agree with the majority that the district court erred in relying on surveillance logs, rather than the affidavits, to establish probable cause. We part on their holding that the affidavits supporting the issuance of a warrant to search the residence of Martha Gomez, excised of their false statements, do not establish probable cause. The affidavits, properly redacted, support the magistrate's determination of probable cause. I therefore respectfully dissent.
 
 
 13
 Gomez argues, and the majority agrees, that nothing in any affidavit links Gomez with a blue Nissan, driven by the woman who delivered the money at the Marina Green parking lot, or any other blue Nissan.
 
 
 14
 The affidavits, however, link Gomez to a Japanese import car, though not specifically to a blue Nissan. viewing the affidavits less the false statements, the following conclusions can reasonably be reached:
 
 
 15
 (a) Gomez resides at 12 Marshall Way. ER at 76.
 
 
 16
 (b) On June 9, 1987, sometime after 10:00 a.m., an hispanic woman drove a Nissan Sentra, California license 1KLL228, from Marina Green to 77 Parkrose Avenue, after making a delivery of drug money for laundering. ER at 123-25.
 
 
 17
 (c) At some time on June 9, 1987, Gomez arrived at 77 Parkrose. ER at 75, 76.
 
 
 18
 (d) Gomez drives an import car of Japanese make. ER at 76.
 
 
 19
 I recognize the difficulties with conclusion (d). Affiant's declaration that Julissa Raygosa told the FBI that Gomez drives a blue Nissan is not an accurate statement. See ER at 266. What Julissa told the FBI was that Gomez drove a "small gray car, possibly a Mazda, Nissan, or Toyota." Id. Clearly, the color designation is false and must be exised. The specific model designation also is misleading, and thus it must be exised. However, the model designation was not false or misleading insofar as it can be read to signify generically a Japanese import. This reading is particularly justified when one considers that Julissa at the time was 13 years old. Children that age (and some adults at any age) are not widely known for their discernment in distinguishing car models. Moreover, Nissans, Mazdas and Toyotas, particularly those from 1987 and earlier, bear many strong generic resemblances to one another. Many people have difficultly telling these models apart.
 
 
 20
 Judge Schwarzer, referring to another falsehood contained in the affidavits, captured the essence of this analysis:
 
 
 21
 The issue you raise is, if a statement is false, do you have to take it out completely or can you . . . allow the affidavit to carry with it the substance of that statement? I'm saying that even though the statement was erroneous . . . the substance of what she said is correct . . . . [T]he point is that the information -- the true information corroborates the substance of the statement in the affidavit.
 
 
 22
 SER at 61.
 
 
 23
 United States v. Foster, 711 F.2d 871, 879 (9th Cir. 1983), does not require complete redaction of the affidavit reference to the car. It is enough that material is deleted only to the extent that it is false and misleading; to the extent that it is not, its substance is properly retained for the purposes of determining probable cause. The Fourth Amendment requires no more. All that is required by the Constitution or logic is redaction of the color and specific model designations contained in the affidavit. The majority requires too much.
 
 
 24
 Conclusions (a)-(d), taken together, are sufficient to support the magistrate's finding of probable cause to search Gomez' residence even if only by a slender margin. "[I]n borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." United States v. Terry, 911 F.2d 272, 275 (9th Cir. 1990) (citing United States v. Martinez, 588 F.2d 1227, 1234 (9th Cir. 1978)).
 
 
 25
 I am zealous as the majority in my disapproval of misconduct by the police. Our disagreement lies in our reading of controlling authority. I would affirm.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 These false statements are that Gloria and Julissa Raygosa said that Martha Gomez drove a blue Nissan. Further, the statement that Julissa knew her godmother Martha Gomez as "Nina" was misleading. In truth, Julissa had explained that "Nina" is a shortened form of the Spanish word for godmother. A generic term such as this is inappropriate to establish an identity for purposes of probable cause