119 F.3d 8
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
John Robert SMITH, Defendant-Appellant.
 No. 96-30193.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 7, 1997.
Decided July 21, 1997.
 
 1
 Before: REINHARDT and THOMAS, Circuit Judges, and SEDWICK,** District Judge.
 
 
 2
 MEMORANDUM*
 
 I. Background
 
 3
 John Robert Smith appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).
 
 
 4
 On July 17, 1989, Smith was convicted of second degree burglary by a state court in Washington. On October 31, 1995, Bureau of Alcohol, Tobacco, and Firearms Special Agent Wyatt executed a search warrant for Smith's residence and found a quantity of methamphetamine, two firearms, and assorted ammunition.
 
 
 5
 Smith was indicted for possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At a pretrial hearing, the district court denied Smith's motion to suppress and request for an evidentiary hearing. Thereafter, Smith entered a conditional plea of guilty. Smith was sentenced to a term of imprisonment of 57 months after the district court increased Smith's base offense level from 17 to 21, pursuant to U.S.S.G. § 2K2.1(b)(5), based upon its finding that Smith possessed a firearm in connection with another felony offense. Smith timely appealed.
 
 II. Motion to Suppress
 
 6
 Generally, motions to suppress are reviewed de novo. United States v. Noushfar, 78 F.3d 1442, 1447 (9th Cir.1996). The trial court's factual findings are reviewed for clear error. Id.
 
 
 7
 Smith contends the search warrant was issued without probable cause because it did not specify that a crime was occurring or had occurred. We review the magistrate judge's issuance of the search warrant for clear error to see if he had a substantial basis for concluding that the affidavit in support of the warrant established probable cause. U.S. v. Mendonsa, 989 F.2d 366, 368 (9th Cir.1993). "A magistrate judge may issue a search warrant if, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular location. United States v. Clark, 31 F.3d 831, 834 (9th Cir.1994), cert. denied, 115 S.Ct. 920 (1995).
 
 
 8
 The search warrant for Smith's residence was issued on the basis of Wyatt's affidavit. In the fall of 1995, a detective with the Yakima Police Department advised Wyatt that an informant had observed an individual known to the informant as "J.R." in possession of a handgun and shotgun in his residence at 1315 South 8th Avenue, Apt. # 4, in Yakima, Washington. Further investigation revealed that "J.R." matched the description of Smith, a convicted felon.
 
 
 9
 Wyatt's affidavit indicated that during the past four weeks a confidential, reliable informant had observed a white male known to him or her as "J.R." in possession of a Glock .40 caliber pistol and a shotgun at 1315 South 8th Avenue, Apt. # 4, in Yakima, Washington. According to Detective Jim Castillo of the Yakima Police Department, the informant had worked for him since 1991, during which time he had made approximately 11 controlled buys of narcotics and provided information resulting in at least five successful narcotics search warrants and at least 12 arrests for narcotics offenses. The informant further indicated that "J.R." was in possession of a .357 magnum caliber revolver at that address, but had since sold or traded it according to "J.R."
 
 
 10
 Wyatt's affidavit also said that Kuie Wen, owner and landlord of Apt. # 4, advised him that the apartment was leased to "J.R. Smith" on September 1, 1995. Approximately two weeks after "J.R. Smith" moved in, Wen saw a .357 magnum caliber revolver in the apartment. Wen stated that on October 18, 1995, he entered the apartment and observed what appeared to be a shotgun near the coat closet.
 
 
 11
 The affidavit said that Wyatt checked with the Yakima County Superior Court Clerk's Office and found that Smith had been convicted of two prior felonies in Yakima County. Finally, Wyatt's affidavit indicated that on October 17, 1995, Castillo showed two Yakima County Sheriff's Department photographs of Smith to the informant. The informant identified both photographs as being the person he/she knew as "J.R."
 
 
 12
 Under the totality of the circumstances, the magistrate judge's determination that there was a fair probability that evidence of illegal activity would be found at Smith's residence was not clearly erroneous. There was a substantial basis for the magistrate judge's conclusion that the affidavit in support of the warrant established probable cause. The district court did not err in denying Smith's motion to suppress.
 
 C. Staleness
 
 13
 Smith contends that the evidence underlying the warrant was stale. Some of the evidence from the informant predated by four or five weeks the execution of the warrant. However, Wen reported he saw what appeared to be a shotgun on October 18, 1995.
 
 
 14
 The timeliness of a search warrant depends on whether it is reasonable to believe that the items to be seized are still on the property; whether the illegal activity is of a continuing nature is also relevant to this determination. See United States v. Gann, 732 F.2d 714, 722 (9th Cir.), cert. denied, 469 U.S. 1034 (1984). The mere lapse of substantial amounts of time is not controlling. United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir.1993).
 
 
 15
 The information from the informant was coupled with recent information from Wen suggesting continued illegal possession of firearms. The district court could properly find that this evidence was not stale and an adequate basis upon which to find probable cause. See United States v. Foster, 711 F.2d 871, 878 (9th Cir.), cert. denied, 465 U.S. 1103 (1983) (evidence of drug transactions occurring fifteen months prior to the issuance of a search warrant not stale where evidence also linked defendant to a drug sale occurring three months prior to the issuance of the search warrant).
 
 D. Rule 41(c) Violation
 
 16
 Smith contends that the search warrant was not executed within ten days of its issuance as required by Fed.R.Crim.P. 41(c).
 
 
 17
 A search warrant was issued on October 20, 1995. Due to an incorrect identification of Smith's residence as part of a fourplex instead of a duplex, that warrant was marked "not served because of indefinite description." Wyatt prepared a corrected affidavit and a new warrant was issued on October 23, 1995. The warrant was executed on October 31, 1995, and returned on November 2, 1995. There was no Rule 41(c) violation.
 
 III. Denial of a Franks Hearing
 
 18
 Smith challenges the district court's denial of his request for a Franks hearing. The decision of a district court not to hold a Franks hearing is reviewed de novo. United States v. Homick, 964 F.2d 899, 904 (9th Cir.1992).
 
 
 19
 Search warrants are presumptively valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). Nevertheless, a defendant may challenge a facially valid search warrant when it contains "deliberate or reckless omissions of fact that tend to mislead." United States v. Dozier, 844 F.2d 701, 705 (9th Cir.), cert. denied, 488 U.S. 927 (1988).
 
 
 20
 A defendant is entitled to a Franks hearing upon a "substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." United States v. Stanert, 762 F.2d 775, 781 (9th Cir.), modified, 769 F.2d 1410 (1985). Every fact in the affidavit need not be true because probable cause may be based on hastily gathered information. Franks, 438 U.S. at 165. The law demands, however, that the affiant believed the information to be true. Id.
 
 
 21
 First, Smith offers his affidavit testimony to assert that he never possessed or even spoke about a Glock pistol. The information about the Glock pistol came from the informant. The veracity of an informant is not a proper issue for a Franks hearing. United States v. Perdomo, 800 F.2d 916, 921 (9th Cir.1986). Smith can only attack the credibility of the affiant, not the informant. See United States v. DiCesare, 765 F.2d 890, 895 (9th Cir.1985). Assuming Smith never owned or spoke about a Glock pistol, Smith has failed to demonstrate that the affidavit was deliberately false or made in reckless disregard for the truth. Furthermore, if this allegedly false material were set aside, there remains sufficient content in the warrant affidavit to support a finding of probable cause.
 
 
 22
 Second, Smith contends that Wen was acting as an agent for the Government when he entered Smith's apartment on October 18, 1995. The district court found that Smith's allegation was completely speculative and conclusory. We agree.
 
 
 23
 Wen avers that he entered Smith's apartment on October 18, 1995, because of Smith's failure to pay rent. He looked in the hall closet near the front door to determine if Smith still had clothing in the apartment. Wen observed a shotgun leaning against the wall in the closet. Wen denies receiving any request from Wyatt to enter and search Smith's apartment. Wyatt denies that Wen entered the apartment at his suggestion or instruction. Wyatt's purpose in contacting Wen on October 18, 1995, was to obtain more detailed information regarding Wen's prior observation of a .357 magnum caliber revolver in Smith's apartment. Smith fails to make a showing that Wen was acting as an agent for the Government when he entered his apartment.
 
 
 24
 Finally, Smith contends that Wyatt recklessly and intentionally omitted from his affidavit that his memory was refreshed by Castillo. The affidavit states in relevant part:
 
 
 25
 On one occasion during the past four weeks, a reliable, confidential informant observed a white male known to him/her as "J.R." in possession of ... firearms.... The informant further advised that "J.R." was also in possession of a Smith & Wesson, .357 magnum caliber revolver at that address, but has since sold or traded it according to "J.R."
 
 
 26
 Wyatt later testified that "[t]he information provided by Detective Castillo's informant was communicated to me by Detective Castillo for purposes of preparing the search warrant affidavit." Wyatt further explained this statement in a later affidavit wherein he stated:
 
 
 27
 I spoke with the informant in this case on or about September 30, 1995, concerning the defendant's possession of a .357 caliber magnum revolver and a .40 caliber Glock semiautomatic pistol. I used the information I received from the informant in the preparation of an affidavit for a search warrant for a search of the defendant's residence. I spoke with detective Jim Castillo of the Yakima City/County Narcotics Unit on or about October 19, 1995, concerning information from the informant relating to the defendant's possession of the above-described .357 caliber pistol and the .40 caliber pistol. I used the informant information I received from Castillo to refresh my memory concerning what the informant had told me earlier about the defendant's possession of firearms, because it had been approximately 3 weeks since I had spoken to the informant.
 
 
 28
 According to Castillo,
 
 
 29
 On 10-23-95 this detective assigned to the City/County Narcotics Unit was called by agent Bob Wyatt. Agent Wyatt wanted to know some information about the residence of 1315 south 18th ave. Yakima, Washington. Agent Wyatt was attempting to obtain a search warrant for the residence of apartment # 4. I had obtained some information from a confidential and reliable informant and had Agent Wyatt utilize some of it for his warrant. Agent Wyatt spoke to this informant and obtained his warrant for the residence.
 
 
 30
 The search warrant affidavit does not state when Wyatt spoke with the informant, nor does it state whether Wyatt spoke with the informant directly. The supplemental affidavits confirm that Wyatt spoke with the informant at some point before the warrant was issued on October 23, 1995.
 
 
 31
 Smith contends that Wyatt never spoke with the informant, but that his original affidavit implied that he did. Even if it does, the record demonstrates that the implication is true. Moreover, even if failure to carefully explain how and when Wyatt obtained information from the informant was improper, Smith has failed to make a substantial preliminary showing that the affidavit contained actual falsity, and that the falsity was either deliberate or resulted from reckless disregard for the truth. Smith's allegations cannot be merely conclusory; rather, they must be accompanied by a detailed offer of proof. Franks, 438 U.S. at 171; see also United States v. Young Buffalo, 591 F.2d 506, 509 (9th Cir.), cert. denied, 441 U.S. 950 (1979).
 
 IV. Sentence Enhancement
 
 32
 Smith claims that the district court erred in assigning him a four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for "use or possession" of a firearm in connection with a felony. Smith contends that there was insufficient evidence that he either "used" or "possessed" a firearm within the meaning of U.S.S.G. § 2K2.1(b)(5). We conclude there was ample evidence of possession which facilitated or emboldened his felony methamphetamine operation.
 
 
 33
 Under United States v. Routon, 25 F.3d 815 (9th Cir.1994), Smith's mere possession of a gun is not enough to establish the possession prong of U.S.S.G. § 2K2.1(b)(5). In Routon, this circuit explained that "the prosecution will have to make a greater showing than a defendant's mere possession of a firearm to obtain a section 2K2.1(b)(5) enhancement." Routon, 25 F.3d at 819. The court enunciated the following standard for establishing the "possession" prong of U.S.S.G. § 2K2.1(b)(5): "to the extent that the government relies upon physical possession, it must show that the firearm was possessed in a manner that permits an inference that it facilitated or potentially facilitated--i.e., had some potential emboldening role--in a defendant's felonious conduct." Id. The defendant's sentence was enhanced in Routon under U.S.S.G. § 2K2.1(b)(5) for "possession" of a firearm in connection with felony theft of a car. On appeal it was held that the revolver in the glove compartment "emboldened him to maintain unlawful possession of the [stolen car]." Id. at 819.
 
 
 34
 Wyatt's case report states that when he asked Smith about the .32 pistol under his mattress, Smith said that he had met an individual by the name of Byron Brooks at the Twin Bridges Restaurant at approximately 11:30 p.m. on October 30, 1995, at which time Brooks gave him the pistol to hold for him and to use as protection against an individual known as "Tiny," in case Tiny tried to steal his finished product.
 
 
 35
 When arrested, Smith had easy access to the loaded .32 caliber pistol. Smith was operating a methamphetamine laboratory in his garage, which was next to his residence. A small quantity of methamphetamine was found under Smith's kitchen sink. Smith admitted that the handgun was given to him by Brooks to protect his methamphetamine operation from Tiny. The circumstances make it highly probable that the gun played a role in Smith's felonious conduct in manufacturing methamphetamine. The district court's enhancement of Smith's base offense level is consistent with Routon.
 
 V. Conclusion
 
 36
 The judgment of the district court is AFFIRMED.
 
 
 
 **
 The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R.36-3