**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John DOE (Minor, Phx),
Defendant-Appellant.**

**No. 84–1211.**

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 17, 1985 *.

Decided June 27, 1985.

As Corrected April 18, 1986.

As Corrected June 9, 1987.

---

* The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 3(f) and Fed.R.App.P. 34(a).

Michael V. Black, Phoenix, Ariz., for defendant-appellant.

Charles F. Hyder, Phoenix, Ariz., for plaintiff-appellee.

Before FLETCHER, BOOCHEVER, and NORRIS, Circuit Judges.

## CORRECTED OPINION

NORRIS, Circuit Judge:

Appellant was convicted of voluntary manslaughter for shooting and killing his father on the front porch of the family residence on the Fort Apache Indian Reservation. Appellant's appeal challenges the district court's determinations that he voluntarily waived his Fifth and Sixth Amendment rights and that exigent circumstances existed to allow a warrantless search of his residence. We affirm.

## I.

On the morning of December 14, 1983, appellant heard his parents fighting on the front porch of the family residence. He grabbed his rifle and ran out to find his father beating his mother. Appellant's sister attempted to grab the rifle or to push it away but the rifle discharged and hit appellant's father in the back. Appellant's brother-in-law took the rifle from appellant and hid it in the shower in a back room of the house.

In response to a radio dispatch for police and medical assistance, Officer Goode arrived at appellant's residence to find the decedent lying shot on the front porch. He asked appellant's sister and brother-in-law what had happened; they told him that appellant had shot his father. Goode entered the house with them and appellant's brother-in-law gave Goode the loaded rifle. Goode took the rifle to the police car and secured it. He neither looked for nor spoke with appellant.

Lieutenant Frank Grijalva arrested appellant later that morning for the tribal offense of criminal negligence and took him into custody. Grijalva advised appellant of his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 478–79 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694 (1966), and his rights pursuant to the Indian Civil Rights Act, under which he did not have a right to free counsel. At that time, appellant indicated that he did not understand his rights; his mother, who was present, indicated that she did. Grijalva did not inquire as to what appellant did not understand, but simply ceased questioning him and took him into custody.

That afternoon, FBI Agent Johnson interrogated appellant while he was in custody at the Bureau of Indian Affairs (BIA). Johnson notified appellant that his father was dead and advised him of his *Miranda* rights by using the standard FBI warning and waiver form. Though appellant appeared to be upset, he claimed to have understood everything of which he was advised and, after having the form read to him, received it and read it back to Johnson. The only trouble appellant had was with the word "coercion," and Johnson told him how to pronounce it and explained its meaning. Appellant did not ask for an attorney and agreed to speak with Johnson without an attorney being present. He also signed the warning and waiver form. Appellant's mother was neither notified of the interrogation nor invited to be present. During the interrogation, appellant stated, amongst other things, that he had shot his father and that he was physically stronger than his father.

While still in custody at the BIA, appellant was reinterrogated by Johnson on January 3 and 5, 1984. On both occasions, Johnson orally advised appellant of his *Miranda* rights and appellant agreed to be questioned without an attorney and to give a voluntary statement, which he did. In neither instance did Johnson ask appellant to sign a warning and waiver form. Appellant's statements were, like those made on December 14, 1983, incriminating and inconsistent with any "self-defense" or "defense of others" claim.

On March 8, 1984, an information was filed charging appellant with first-degree murder in violation of 18 U.S.C. §§ 1111, 1153. Appellant pled not guilty and filed a motion for a voluntariness hearing and a motion to suppress.

On June 20 and 21, 1984, a combined nonjury trial and evidentiary hearing was held. At its conclusion, the district court denied appellant's motion to suppress and found that his statements were voluntary. The district court found appellant guilty of voluntary manslaughter.

On July 25, 1984, appellant filed a timely notice of appeal. The district court had jurisdiction in this matter pursuant to 18 U.S.C. § 5032. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Appellant does not contend either that he was given inadequate *Miranda* warnings or that the district court applied an erroneous legal standard in determining that his waivers were voluntary. He appeals solely the district court's ultimate determinations that on December 14, 1983 and January 3 and 4, 1984, after appellant received *Miranda* warnings and prior to his interrogation, appellant in fact knowingly and voluntarily waived his Fifth and Sixth Amendment rights.

In *United States v. Hooten*, 662 F.2d 628 (9th Cir.1981), *cert. denied*, 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982), we held that provided the district court applied the correct legal standard, its "ruling on the voluntariness issue is subject to the 'clearly erroneous' standard of

review." *Id.* at 631. We now review that holding in light of our recent en banc decision in *United States v. McConney,* 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied.* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).[1] In *McConney,* we said that "mixed questions [of law and fact] in which the applicable legal standard provides for a strictly factual test, such as state of mind, and the application of law to fact, consequently, involves an 'essentially factual' inquiry" are reviewed under the clearly erroneous standard. *Id.* at 1203. The question whether a defendant knowingly and voluntarily waived his *Miranda* rights is precisely such a mixed question. It requires a court to inquire into the totality of the circumstances and the defendant's state of mind to ascertain whether he in fact knowingly and voluntarily waived his rights. *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197 (1979). It does not require a court to consider abstract legal doctrines, to weigh underlying policy considerations and to balance competing legal interests. *Cf. McConney,* 728 F.2d at 1205 (The issue of exigent circumstances is reviewed de novo because it requires a court to balance competing legal interests—the safety of law enforcement officers and Fourth Amendment privacy interests.) Rather, the question is an " 'essentially factual' inquiry" which a district court is best suited to make. We therefore find our holding in *Hooten* to be consistent with *McConney* and reconfirm that the issue of whether a defendant in fact knowingly and voluntarily waived his Fifth and Sixth Amendment rights is reviewed under the clearly erroneous standard. *Cf. United States v. Salvador,* 740 F.2d 752, 757 n. 3 (9th Cir.1984), *cert. denied,* 469 U.S. 1196, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985) (A district court's finding that the defendant's consent to search was voluntary is reviewed under the clearly erroneous standard.)

■ The district court found that prior to appellant's first interrogation on the afternoon of December 14, 1983, he voluntarily waived his Fifth and Sixth Amendment rights with a clear understanding of what he had been advised of. That finding is not clearly erroneous.

At the time appellant was first questioned, he was in the eleventh grade, had a good command of the English language and was able to converse coherently and rationally with FBI Agent Johnson. There is no indication that he was too upset or of insufficient intelligence and maturity to understand the rights he was waiving or the consequences of his waiver. To the contrary, as the district court noted, he was intelligent and aware enough to pick out the word "coercion" and ask how to pronounce it and what it meant. After Johnson responded to his inquiry, appellant signed the standard FBI warning and waiver form. In short, there is ample evidence in the record to support the district court's finding that appellant knowingly and voluntarily waived his rights. There is no support in the record for appellant's conclusory statement that because on the morning of December 14, 1983, appellant was advised of both his *Miranda* rights and his rights under the Indian Civil Rights Act, which offers no right to free counsel, appellant "could only have been confused about his right to 'free counsel' " that afternoon when he was advised of and waived only his *Miranda* rights.

■ The district court also found that prior to appellant's subsequent interrogations on January 3 and 4, appellant again voluntarily waived his rights. Appellant offers no support for his contention to the contrary that the statements made on January 3 and 4 should have been suppressed simply because no formal written waivers were signed. On both occasions, appellant was reminded of his rights, stated that he understood those rights and voluntarily offered a statement.

The district court's determinations were not clearly erroneous. The government has sustained its heavy burden of demonstrating that appellant in fact knowingly and voluntarily waived his Fifth and Sixth

---

**1.** This panel is free to reexamine an earlier decision of a three-judge panel that may have been undermined by a later en banc decision. *United States v. Howard,* 758 F.2d 1318, 1320 n.

1 (9th Cir.1985) (per curiam) (reexamining the standard of review for probable cause in light of *McConney* ).

Amendment rights. *See Fare,* 442 U.S. at 724, 99 S.Ct. at 2571 (citing *Miranda v. Arizona,* 384 U.S. at 475, 86 S.Ct. at 1628).

## III.

Appellant also challenges the warrantless entry into his residence and the district court's denial of his motion to suppress the rifle obtained by Officer Goode while inside the residence.[2] Appellant bases his challenge exclusively on the contention that the district court erred in finding that exigent circumstances existed at the time Goode entered appellant's home. We review de novo the district court's determination that exigent circumstances existed. *McConney,* 728 F.2d at 1205.

In response to a radio dispatch, Officer Goode arrived at appellant's residence to find the decedent lying shot on the front porch. He was confronted with a situation in which he reasonably and in good faith concluded that a substantial risk of harm to himself and others existed that justified an immediate search for the weapon prior to the obtaining of a warrant. He immediately sought and obtained the weapon in order to render the premises secure for the family, medical technicians and others. On this record we hold that exigent circumstances existed. *See Salvador,* 740 F.2d at 758 (Exigent circumstances include "those in which a substantial risk of harm to the persons involved ... would arise if the police were to delay a search until a warrant could be obtained." (quoting *United States v. Robertson,* 606 F.2d 853, 859 (9th Cir.1979).)

AFFIRMED.

FLETCHER, Circuit Judge, concurring:

I write separately to chide the majority for refusing to recognize that appellant's contention that he was confused about his right to free counsel implicates the adequacy of the warnings. He claims confusion from simultaneous advice that he had the right to counsel under *Miranda,* but that he had no right to counsel under the Indian Civil Rights Act.

The majority should have reviewed de novo that aspect of appellant's challenge as required by *United States v. Noti,* 731 F.2d 610, 614 (9th Cir.1984).[1]

Nonetheless, I concur since I conclude that appellant was adequately advised of his fifth and sixth amendment rights before any interrogation took place. Any error in the initial advisement was cured when FBI Agent Johnson later the same day fully advised appellant of his *Miranda* rights. *See United States v. Lopez-Diaz,* 630 F.2d 661, 664 (9th Cir.1980).

---

2. We note initially that an argument could be made that the officer's entry of the house was consensual, and that the weapon was voluntarily given to him, rather than being obtained as the result of a search. For the purpose of our discussion, however, we assume that there was a search.

1. De novo review is appropriate because the adequacy of *Miranda* warnings involves application of a legal standard to a set of facts, which "require[s] the consideration of legal concepts and involves the exercise of judgment about the values underlying legal principles," *United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). It is an inquiry that implicates important constitutional rights. *See id.* at 1202–03. However, the factual findings underlying the adequacy challenge, such as what a defendant was told, are subject to clearly erroneous review.