**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Allen WAUNEKA, Defendant–Appellant.**

**No. 86–1385.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1988.

Decided March 21, 1988.

Michael V. Black, Fields & Black, Phoenix, Ariz., for defendant-appellant.

W. Allen Stooks, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before GOODWIN, FARRIS and NELSON, Circuit Judges.

FARRIS, Circuit Judge:

This is the second appeal in this prosecution for crimes committed on an Indian reservation. The Government brought the first appeal, attacking a pretrial order that suppressed the defendant's statements to federal investigators. We affirmed the district court's finding that the defendant, Allen Wauneka, was subjected to custodial interrogation on January 20, 1984 at the time he was asked whether he had raped a nurse at Fort Defiance, Arizona in December of 1983. Accordingly, we excluded the confession to that crime that Wauneka gave after he was taken into custody but before he was administered the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). With respect to Wauneka's post-warning statements, we remanded to the district court for reconsideration of their admissibility in light of *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). The district court, following the test laid down in *Elstad,* admitted Wauneka's post-warning statements into evidence because it found that both his pre-warning and post-warning statements were voluntary. A federal jury then convicted Wauneka of two counts of rape and two counts of assault.

This appeal concerns the admissibility of those statements made by Wauneka after he was given *Miranda* warnings. Wauneka argues that the district court applied the wrong standard because his initial, unwarned statement was involuntary. Under *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), which governs the admissibility of statements made after an involuntary confession, Wauneka claims that his subsequent statements were insuf-ficiently attenuated from the unwarned confession to remove the taint of the *Miranda* violation.

Wauneka's appeal also raises questions regarding the jury instructions; the Government's alleged failure to produce exculpatory *Brady* evidence; and the admission into evidence of certain statements made by Wauneka before he was given *Miranda* warnings.

## JURISDICTION

The district court's jurisdiction was based on 18 U.S.C. § 3231. This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## FACTS

R.M., a nurse at the Public Health Service Hospital in Fort Defiance, was raped and stabbed on a deserted hillside shortly before midnight on December 16, 1983. She survived. Another nurse at the same hospital, A.W., was shot in the head through the back window of her home with a .22 caliber rifle on January 11, 1984. She too survived.

On January 17, 1984, two Bureau of Indian Affairs officers were patrolling the hospital grounds when they observed four young men, one of whom was Wauneka, in the parking lot. The patrolmen asked the four men to identify themselves and then questioned them. The four names were then included in a list of possible suspects given to B.I.A. Inspector Henry Tsosie, who had earlier issued a physical description of R.M.'s assailant based on three interviews with R.M.

On January 19, 1984, Wauneka and a friend, Franklin Begay, were visited by B.I.A. investigators and asked to come to the B.I.A. office. They did so.[1] At the office, Wauneka was told that he was not being accused of any crime, and that the procedure was routine. The B.I.A. officials ob-

---

1. The parties disagree as to whether Wauneka went to the B.I.A. office voluntarily. The Government maintains that Wauneka "willingly consented." Wauneka contends that he "did not volunteer to go along," and that he was not informed that he did not have to accompany the officers. The Ninth Circuit opinion reported that Wauneka "consented." 770 F.2d 1434, 1436.

tained descriptive data and asked Wauneka why he had been on the hospital grounds two nights earlier. They also photographed him for purposes of future identification.

While waiting for Begay to be interviewed, Wauneka was questioned further by B.I.A. Chief Inspector Bill King. In response to an inquiry about the stabbing and rape of R.M., Wauneka said that he knew about the incident. He also said that he knew about the A.W. shooting, explaining that he had been walking near the A.W. residence on the night of the shooting when he heard a shot and saw a man run down a nearby ravine. Before returning Wauneka and Begay to their home, the investigators took them to the scene of the A.W. shooting and listened to Wauneka's description of what he had seen.

On January 20, 1984, investigators visited Wauneka at his home and asked him to return to the B.I.A. office for further questioning. He was not told that he was not obligated to go. At the office, Wauneka refused at first to give the name of the man whom he saw run down the ravine, then identified him as "Francisco."

Later that day, Wauneka was revisited by two uniformed officers and asked to return for further questioning. When told that the information he had given earlier had not been confirmed, Wauneka admitted that he did not know a "Francisco." Wauneka changed his account of the night of the shooting, and was accused by officials of having committed both the shooting and the rape. Wauneka initially denied both accusations but later admitted to the rape during intensive questioning by F.B.I. Agent Zembiec. Zembiec questioned Wauneka extensively about his wardrobe on the night of the shooting, eliciting the information that Wauneka had worn a stocking cap, black pants, and a black jacket.

The parties disagree as to what transpired next. The Government contends that Wauneka was orally advised of his *Miranda* rights, said he understood them, and agreed to continue talking. Wauneka testified that no warnings were given until after he confessed to both the rape and the shooting. When the confessions were completed, Wauneka signed a waiver form acknowledging the waiver of rights that he had allegedly made earlier.

Wauneka was then taken to a trash dump where he was supposed to have disposed of the rifle used in the A.W. shooting, but the rifle could not be found. Next, investigators accompanied him to his residence, where he produced the tennis shoes that he allegedly wore during the commission of both crimes. Late that night, he was told he was under arrest.

On Sunday, January 22, 1984, Wauneka made additional statements pertaining to the rape and shooting after signing a second waiver of rights form. He was brought before a magistrate on January 23, 1984.

## PROCEDURAL HISTORY

After a four-day hearing on Wauneka's motion to suppress, the district court ruled that Wauneka had been subjected to custodial interrogation on January 20, 1984, before he was given *Miranda* warnings. The court then suppressed Wauneka's prewarning confession to the rape. The court further found that once advised of his rights, Wauneka voluntarily, knowingly, and intelligently waived them. As a result, the court held that Wauneka's January 20, 1984 admission of guilt in the A.W. shooting was admissible. The court also found, however, that Wauneka's post-waiver statements on January 20 and 22 regarding the R.M. rape were inadmissible because tainted by the earlier unwarned confession.

We affirmed the finding of custodial interrogation on January 20, but vacated the suppression order and remanded for a determination of the admissibility of the post-waiver statements under the standard articulated by the Supreme Court in *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Our opinion instructed the district court as follows:

Under the Supreme Court's analysis in *Elstad*, in determining the admissibility of a defendant's statement given after

the *Miranda* warning, the court should look first to determine whether the statement made by a defendant before the *Miranda* warning was actually coerced in violation of the fifth amendment. If it was, then the court must suppress the evidence unless the violation was sufficiently attenuated to permit the use of the evidence under standards announced in *Brown.* If, on the other hand, the prior statement was voluntary in the sense that it was not coerced in violation of the fifth amendment, though obtained in technical violation of the *Miranda* requirements, the court should suppress the statement given after the *Miranda* warning only if the court finds that the subsequent statement was not voluntarily made. This decision would take into consideration the surrounding circumstances, the combined effect of the entire course of the officer's conduct upon the defendant, including the effect of his previously having made a confession, and the manner in which the officers utilized this prior confession in obtaining a second confession.

*Wauneka,* 770 F.2d at 1440.

On remand, the district court held the post-warning statements to be admissible. Reasoning that "[t]here were no improper tactics nor any deliberate coercion in obtaining the unwarned statement," the court found that the initial oral, unwarned confession was voluntary. This finding of voluntariness triggered an analysis of the subsequent statements under *Elstad* rather than the more stringent standard for coerced confessions laid down in *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Applying *Elstad's* totality of the circumstances approach to the question whether the post-warning statements were voluntary, the court found that the absence of "undue or improper tactics" and the informality of the interrogation rendered the statements voluntary and hence admissible.

Following a seven-day trial, the jury found Wauneka guilty of assault with intent to commit murder, assault resulting in serious bodily injury, and two counts of rape. On December 1, 1986, Wauneka was sentenced to concurrent sentences of ten, fifteen, and fifteen years. A timely notice of appeal was filed on December 8, 1986.

## DISCUSSION

### I. *The Post–Warning Statements*

■ The district court ruled on remand that both the pre-*Miranda* warning and the post-warning statements were voluntary. Wauneka disputes both of these conclusions. We review determinations of voluntariness *de novo. Miller v. Fenton,* 474 U.S. 104, 109–12, 106 S.Ct. 445, 449–51, 88 L.Ed.2d 405 (1985); *United States v. Hudgens,* 798 F.2d 1234, 1236 (9th Cir.1986).[2]

### A. The Pre–Warning Admissions

■ The central focus of Wauneka's appeal is his claim that his first confession of January 20, 1984 was involuntary. If it was involuntary, then the district court was wrong to apply the "totality of the circumstances" test of *Oregon v. Elstad* to the post-warning statements, as opposed to the "taint" analysis of *Brown v. Illinois.* It is undisputed that the voluntariness of the first confession is evaluated in light of the totality of the circumstances, *Mincey v. Arizona,* 437 U.S. 385, 401, 98 S.Ct. 2408, 2418, 57 L.Ed.2d 290 (1978), and the Government must prove voluntariness by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972); *United States v. Tingle,* 658 F.2d 1332, 1335 (9th Cir.1981).

In arguing that the first confession was coerced, Wauneka points to a series of factors. First, the police isolated him from family and friends for several hours. Second, Wauneka contends that he had had

2. The Government urges us to apply the clearly erroneous standard to this voluntariness determination. That standard applies to the voluntariness of a defendant's waiver of his *Miranda* rights, *United States v. Doe,* 819 F.2d 206, 208–09 (9th Cir.1985) (superseding 787 F.2d 1290 and 764 F.2d 695), not to the voluntariness of a confession. The former is treated as a mixed question of law and fact, 819 F.2d at 209, the latter as a pure question of law.

nothing to eat all day. The district court, however, found that he had been offered food and drink by the officers. Third, Wauneka, according to the testimony of a psychiatrist, was marginally retarded and "more susceptible than other individuals to coercion and intimidation by authority figures." Fourth, F.B.I. Agent Zembiec allegedly intimidated Wauneka by implying that if Wauneka did not confess, the Public Health Service Hospital would shut down and Wauneka's pregnant girlfriend would not receive adequate medical care.

■ Had Wauneka proven these allegations, he would have raised a colorable claim of psychological coercion. *See, e.g., Lynumn v. Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963); *Tingle,* 658 F.2d at 1335–37. He did not prove them, however. We remanded this case to resolve this and other areas of factual dispute, and the district court resolved this dispute in favor of the Government. The district court's factual findings guide our *de novo* review of its legal conclusion that the pre-warning statements were voluntary. As there is evidence in the record to support these factual findings, we are satisfied that the *Mincey* test for voluntariness was met.

### B. The Adequacy of the Warnings

■ Wauneka's strongest argument for the suppression of his post-warning statements is that the warnings were defective. As a preliminary matter, there is a dispute as to whether he was warned orally before he made a series of confessions on the night of January 20, and if he was warned, what the content of those warnings was. The Government responds that the oral warnings were correct even though the statement of rights on the waiver form that Wauneka signed after the interrogation was defective.

The record supports this contention. While we do not countenance the giving of defective written warnings, we find the confessions admissible because they followed a review by Wauneka and valid waiver of an accurate statement of his rights. The district court therefore did not err in admitting into evidence the confessions that followed the oral warnings.

### C. The Post–Warning Statements

■ Our conclusion that the pre-warning statements were made voluntarily triggers an analysis of the post-warning confessions under *Elstad.* Under *Elstad,* nothing short of a finding of involuntariness will suffice to exclude the post-warning confessions. Although the *Elstad* Court did not specifically define coercion, it did instruct courts not to consider the psychological impact on a defendant of his pre-warning disclosure in their determinations of the voluntariness of post-warning admissions. Moreover, the Court identified "physical violence or other means deliberately calculated to break the suspect's will" as the types of police conduct with which courts should be most concerned. 470 U.S. at 312, 105 S.Ct. at 1295. A review of the record on remand satisfies us that no treatment of that sort occurred here. The post-warning statements were voluntary.

### II. *The Allen Charge*

■ After deliberating for 11¼ hours, the jury requested and was given additional instructions by the district judge. It returned a guilty verdict shortly thereafter. This court reviews jury instructions for abuse of discretion, viewing the instructions as a whole. *United States v. Abushi,* 682 F.2d 1289, 1299 (9th Cir.1982). The test for impropriety of an *Allen* charge is whether, in its context, the instruction had a coercive effect. *United States v. Hooton,* 662 F.2d 628, 636–37 (9th Cir.1981), *cert. denied,* 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982). "This circuit evaluates coerciveness on the basis of (1) the form of the instruction; (2) the period of deliberation following the *Allen* charge; (3) the total time of jury deliberations; and (4) the indicia of coerciveness or pressure upon the jury." *United States v. Foster,* 711 F.2d 871, 884 (9th Cir.1983) (citing *United States v. Beattie,* 613 F.2d 762, 765–66 (9th Cir.), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980)), *cert. denied,*

465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984).

◼ Wauneka does not identify any specific language in this *Allen* charge upon which his claim of coercive effect was based. Rather, he argues that the coerciveness of the charge should be inferred from the lengthiness of the jury's deliberations before the charge and the shortness of the deliberations after it. The Government does not dispute Wauneka's contention that the period was short, but argues that the record as a whole establishes the absence of coercion or undue influence on the jury.

The record does not establish the precise amount of time that elapsed between the judge's instruction and the return of a verdict. There is no evidence, however, of jury frustration over its inability to reach a verdict, nor is there any indication that the judge knew how the jury stood when he addressed minority position jurors. *See Beattie*, 613 F.2d at 766. We cannot find a coercive effect.

### III. *The Brady Claim*

◼ Wauneka also urges reversal on the ground that the Government failed to disclose significant material containing the name and observations of a nurse in the area of the rape and stabbing at approximately the same time. The nurse had seen a person in the area whose description, according to Wauneka, "was closer to the initial composite description prepared by [R.M.] and unlike the physical characteristics of Allen Wauneka." When the nurse's name came up at trial, the Assistant U.S. Attorney admitted that he had consciously decided not to disclose this information to the defense, but argued that nondisclosure was justified because the material was inconclusive.

Reversal for a *Brady* violation "is warranted only where the government fails, upon defendant's request, to release material evidence and that evidence's suppression can be said to have denied the defendant a fair trial." *United States v. Browne*, 829 F.2d 760, 765 (9th Cir.1987) (citing *United States v. Bagley*, 473 U.S. 667, 675–

78, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383; *see also United States v. Andersson*, 813 F.2d 1450, 1458–59 (9th Cir.1987).

In this case, there was a willful failure on the part of the Government to release information. The issue is whether that information was "material" within the meaning of *Bagley*. A comparison of the notes from a prosecutor's interview with the nurse with a description of Wauneka suggests that the man whom she saw may have been Wauneka. This information, however, *was* furnished to Wauneka prior to trial. He chose not to use it. In fact, although the Government agreed to locate this witness for trial, Wauneka made no request to have her subpoenaed. This inaction on Wauneka's part convinces us that the information was not material, and we find no *Brady* violation.

### IV. *Introduction of Pre-Warning Statements*

◼ On direct examination of Agent Zembiec, the Government introduced incriminating statements made by Wauneka before he was advised of his *Miranda* rights. These statements, which concerned Wauneka's clothing, should have been excluded. The Government maintains that defense counsel waived any objection to the introduction of this testimony by failing to object in a timely fashion. We review the district court's decision not to declare a mistrial for abuse of discretion. *See United States v. Smith*, 790 F.2d 789, 795 (9th Cir.1986).

◼ Our review of the trial record convinces us that no abuse of discretion took place. Although the introduction of the information was erroneous, the district court took pains to correct the mistake by instructing the jury to disregard the testimony. The court also did not allow cross-examination of Wauneka on the clothing issue. These curative measures, considered in conjunction with defense coun-

sel's failure to object or to request further curative efforts, precludes a finding of abuse of discretion for failure to declare a mistrial.

AFFIRMED.