956 F.2d 276
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marcial Gordillo SOLIS, Defendant-Appellant.
 No. 91-10129.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 14, 1992.
Decided Feb. 24, 1992.
 
 Before GOODWIN, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Marcial Gordillo Solis appeals his conviction for possession with intent to distribute cocaine, and conspiracy to do the same. Solis argues that the district court committed a number of errors during trial and sentencing which require reversal. We affirm.
 
 
 3
 On September 18, 1989, Drug Enforcement Administration agent Zenaido Avila met with Francisco Flores at a restaurant in Milpitas, California. The object of the pre-arranged meeting was for agent Avila to purchase cocaine from Flores. Flores had driven to the restaurant in a car belonging to appellant Marcial Solis.
 
 
 4
 At the Milpitas restaurant, Flores, accompanied by Jesse Gonzales, arranged to sell six kilograms of cocaine to agent Avila. Flores informed Avila that he did not have the cocaine with him but would retrieve it from Newark--a nearby city--where it was "safe." The parties agreed to meet later to consummate the deal once Flores and Gonzales had retrieved the cocaine.
 
 
 5
 Flores and Gonzales drove directly from their meeting with agent Avila to the residence of Appellant Marcial Solis. Solis, a close friend of Flores, lived in an apartment building in Fremont near that city's border with Newark. At the apartment, police officers observed Flores and Gonzales walk to the patio area of Solis' unit. Thirty minutes later, Flores and Gonzales drove away from the apartment, again in Solis's car. Flores and Gonzales were followed out of the apartment parking lot by a grey Mustang in which Solis rode.
 
 
 6
 Police officers followed the grey Mustang directly to the Peppermill Restaurant in Santa Clara. Solis and the car's other occupant, Miguel Campos, went into the restaurant. Meanwhile, Flores and Gonzales drove to a nearby phone and called agent Avila. The two then proceeded to the Peppermill's parking lot. At this point, Campos came back out of the restaurant and joined Flores and Gonzales in the parking lot. The three awaited agent Avila's arrival.
 
 
 7
 When Avila arrived, Flores explained to him that the cocaine was in the trunk of the grey Mustang and that "the guy that has the keys to the car is in [the Peppermill]." The three suspects and the agent went into the restaurant. While the party of four waited in the bar area, Flores called to Solis who had been sitting in the restaurant. Solis handed Flores the keys to the grey Mustang, engaged in a short conversation with Flores, and returned to the restaurant.
 
 
 8
 Campos then accompanied agent Avila to the Mustang and opened its trunk. Inside was six kilograms of 90% pure cocaine. At this point, police officers arrested the four suspects.
 
 
 9
 Police officers took Solis to the San Jose police department where Officer Bert Caro questioned him. Caro and Solis conversed in Spanish, Solis' native language. At the station, Solis signed a Spanish-language form which purported to be a consent to the search of his residence.
 
 
 10
 At Solis' residence, police officers found a box containing a gram scale and a plastic baggie filled with 178.5 grams of 90% pure cocaine.
 
 
 11
 At trial, Solis was charged under 21 U.S.C. §§ 846, 841(a)(1) with conspiracy to distribute cocaine and possession with intent to distribute cocaine. Solis was tried together with Gonzales. The jury convicted both and the court sentenced Solis to 135 months imprisonment. Solis then filed this timely appeal.
 
 
 12
 On appeal, Solis raises a number of arguments concerning the search of his residence which resulted in the discovery of cocaine and the gram scale. Solis argues that he did not consent to the search voluntarily, that the cocaine and gram scale constituted impermissible character evidence, and that his fifth amendment privilege against self-incrimination was violated when the district court attempted to compel him to answer questions concerning the cocaine and scale. In addition, Solis argues that the evidence presented at trial was insufficient to support a conviction. Finally, Solis contends that the district court committed reversible error in giving an Allen instruction to the jury.
 
 I. Solis' Consent to the Search
 
 13
 Solis argues that the warrantless search of his home was unconstitutional. In support of this argument, Solis asserts that his purported consent to the search was invalid. A voluntary consent will render a warrantless search constitutional. Voluntariness is a question of fact which is determined from all of the surrounding circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). This court can overturn the district court's finding of voluntariness only if that finding is clearly erroneous. United States v. Fleishman, 684 F.2d 1329, 1334 (9th Cir.), cert. denied, 459 U.S. 1044 (1982). "On appeal the evidence must be viewed in the light most favorable to the factfinder." United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1988).
 
 
 14
 At the motion to suppress, Officer Caro testified that he had read the consent form in Spanish to Solis and that Solis had read along with him. The form stated that Solis had the right to deny his consent without repercussion, that his consent would vitiate the need for a warrant and that evidence found in the search could be used against him. Caro testified that he had explained the form to Solis, that Solis told Caro that he understood the document before signing, and that Solis did not appear confused. At the hearing, Solis told a confused and ambiguous story concerning the episode. In its findings, the court explicitly stated that it found Caro's testimony to be credible and Solis' testimony to be not credible. The court also found that Solis had understood what he was signing. Viewing the evidence presented at the hearing in the light most favorable to the fact-finder, we conclude that Solis has not demonstrated that the district court's finding of voluntariness was clearly erroneous. Fleishman, 684 F.2d at 1334.
 
 
 15
 II. The Relevancy of the Cocaine and the Gram Scale
 
 
 16
 Even if the consent was valid, Solis argues that the cocaine and gram scale found at his residence is evidence of "other crimes" which is inadmissible under Fed.R.Civ.P. 404(b). The same argument was made and rejected in United States v. Bernal, 719 F.2d 1475 (9th Cir.1983). The facts of Bernal are remarkably similar to those of this case. Defendant Bernal was charged with conspiracy to distribute narcotics. Bernal's co-defendant had arranged a cocaine sale with an undercover agent. The co-defendant told the agent that he first needed to pick up the cocaine and proceeded to Bernal's residence. The co-defendant returned to the rendezvous with the agent accompanied by Bernal. Bernal remained in the car during the exchange. Following Bernal's arrest, police searched his residence and found, inter alia, marijuana residue and a small scale. At trial, Bernal denied knowledge of the narcotics transaction and argued that the evidence seized from his residence was inadmissible under Rule 404(b) as "other crimes" evidence. On appeal, this court rejected Bernal's argument because the evidence seized from Bernal's residence had been "offered to prove that Bernal was a participant in a drug distribution conspiracy." Id. at 1478. In this case, the gram scale and cocaine found at Solis' residence were offered to prove that Solis was a participant in the cocaine distribution conspiracy. Solis' "other crimes" argument is without merit.
 
 III. Self-Incrimination
 
 17
 On its cross-examination of Solis at trial, the government questioned Solis concerning the cocaine and gram scale found at his residence. The district court refused Solis' request for immunity from subsequent prosecution concerning this evidence and directed Solis to answer. Solis refused to answer on fifth amendment grounds and the court held him in contempt of court and commented on his refusal in its instructions to the jury. Solis argues that these actions by the district court violated Solis' fifth amendment privilege against self-incrimination.
 
 
 18
 "A defendant who testifies at trial waives his Fifth Amendment privilege and may be cross-examined on matters made relevant by his direct testimony.... The scope of the defendant's waiver is coextensive with the scope of the relevant cross-examination." United States v. Black, 767 F.2d 1334, 1341 (9th Cir.), cert. denied, 474 U.S. 1022 (1985) (citations omitted). On cross-examination, the government may ask questions which are " 'reasonably related' to the subjects covered by the defendant's testimony." United States v. Hearst, 563 F.2d 1331, 1340 (9th Cir.1977), cert. denied, 435 U.S. 1000 (1978).
 
 
 19
 Throughout his testimony, Solis denied any knowledge of the conspiracy to distribute cocaine. As discussed above, the cocaine and gram scale constituted direct evidence of Solis' participation in drug distribution. The evidence was "reasonably related" to Solis' protestations of complete ignorance concerning the conspiracy.
 
 IV. Sufficiency of the Evidence
 
 20
 Solis next argues that the evidence at trial was insufficient to convict him of conspiracy and of possession with intent to distribute. This court will reverse a jury verdict for insufficient evidence "only if no rational trier of fact could have found beyond a reasonable doubt that the defendant committed the offense in question." United States v. Vaughn, 797 F.2d 1485, 1489 (9th Cir.1986). In addition, "[t]he evidence must be viewed in the light most favorable to the government, and the government remains entitled to all reasonable inferences which may be drawn therefrom." United States v. Cuevas, 847 F.2d 1417, 1421 (9th Cir.1988) (citations omitted), cert. denied, 489 U.S. 1012 (1989).
 
 
 21
 With regard to the conspiracy charge, "once the government prove[d] that a narcotics conspiracy exist[ed], 'evidence of only a slight connection [was] necessary to convict the defendant of knowing participation in it.' " Cuevas, 847 F.2d at 1422 (quoting United States v. Arbelaez, 719 F.2d 1453, 1458 (9th Cir.1983), cert. denied sub nom., Ponce de Leon v. United States, 467 U.S. 1255 (1984)) (emphasis in original). Solis concedes that a narcotics conspiracy existed in this case but argues that the government failed to establish even a slight connection between him and the conspiracy.
 
 
 22
 In this case, after Solis' co-defendant told the undercover agent that he needed to obtain the cocaine from "Newark," he proceeded directly to Solis' residence. At this residence, police found a gram scale together with 178.5 grams of cocaine. This cocaine was of the same degree of purity as that involved in the sale at the restaurant. The government offered evidence showing that, on the trip to the restaurant, Solis drove the car containing the cocaine. Solis' co-defendant drove Solis' car. At the restaurant, Solis kept the keys to the cocaine-bearing car until his co-defendant requested them in order to consummate the transaction.
 
 
 23
 Solis has failed to demonstrate that no rational jury could have found beyond reasonable doubt that a slight connection existed between him and the conspiracy. See United States v. Solis, 841 F.2d 307, 309-310 (9th Cir.1988). Solis' reliance on United States v. Sanchez-Mata, 925 F.2d 1166 (9th Cir.1991) is misplaced. There, the defendant was merely a passenger in a car containing drugs. Here, the role of Solis' residence in the transaction, the drug paraphernalia and drugs found at his residence, and the evidence that Solis drove the car containing the drugs push the evidence past the "slight connection" threshold.
 
 
 24
 Concerning the possession with intent to distribute count, conviction in this case "may be based on one of three legal theories: (1) co-conspirator liability; (2) aiding and abetting; and (3) exercising dominion and control over the contraband." Sanchez-Mata, 925 F.2d at 1668. Because co-conspirator liability was established in this case, the evidence was sufficient to convict Solis of possession with intent to distribute.
 
 V. The Allen Instruction
 
 25
 Finally, Solis argues that the trial court committed reversible error in giving the jury an Allen instruction. On the afternoon of December 10, 1989, the jury retired to deliberate. Deliberations continued until 4:30 p.m. and re-commenced at 9:00 a.m. the next morning. After continuing its deliberations for most of the day, the jury declared in the late afternoon that it had reached a verdict as to Solis' co-defendant, but was deadlocked as to Solis. At that point, the court read a modified Allen charge to the jury. Counsel for Solis indicated that he was not "particularly fond" of the instruction. The next day, the jury returned guilty verdicts against Solis.
 
 
 26
 Solis argues that the giving of the Allen charge was impermissibly coercive. Solis notes that, in its charge, the court mentioned the possible fiscal difficulties to be faced by the defendant on retrial. Second, the charge was given after lengthy deliberations. Finally, Solis points out that the charge was given on the heels of the jury's announcement that it had found Solis' co-defendant guilty.
 
 
 27
 This court reviews jury instructions for abuse of discretion, considering the instructions as a whole. United States v. Wauneka, 842 F.2d 1083, 1088 (9th Cir.1988). "This circuit evaluates coerciveness on the basis of (1) the form of the instruction; (2) the period of deliberation following the Allen charge; (3) the total time of jury deliberations; and (4) the indicia of coerciveness or pressure upon the jury." United States v. Foster, 711 F.2d 871, 884 (9th Cir.1983) (citations omitted), cert. denied, 465 U.S. 1103 (1984).
 
 
 28
 The form of instruction used in this case is almost identical to that approved of by this court in United States v. Seawell, 583 F.2d 416, 417 n. 2 (9th Cir.), cert. denied, 439 U.S. 991 (1978). In fact, the only significant difference between that charge and the one used in this case is the absence in the latter charge of any reference to financial concerns of the prosecution. Thus, the form of the charge used in this case is even milder than a charge the form of which has been expressly approved of by this court.
 
 
 29
 The record provides no indication of how long the jury deliberated in the case after the court gave the Allen charge. Total deliberation took about two days. In Wauneka, the jury had deliberated for 11 1/4 hours before the Allen charge was given, and returned a guilty verdict "shortly thereafter." Wauneka, 842 F.2d at 1088. In Wauneka, these facts were insufficient, absent other indicia of coercion, to find that the instruction was improperly given.
 
 
 30
 In addition, the typical indicia of coercion are absent in this case. "There is no evidence ... of jury frustration over its inability to reach a verdict, nor is there any indication that the judge knew how the jury stood when he addressed minority position jurors." Id. at 1089.
 
 
 31
 Solis grounds his coercion argument on the fact that the court gave the Allen instruction soon after the jury had returned a guilty verdict against his co-defendant. Absent other indicia of coercion, we see no reason why this fact should render the instruction inherently coercive. Allen charges sometimes produce acquittals, which do not receive appellate review. Accordingly, it is disingenuous to argue that Allen charges are inherently coercive or inherently biased toward guilty, rather than not guilty verdicts. Finding coercion in this case would be tantamount to holding that an Allen instruction is per se improper in a multi-defendant trial after some co-defendants have already been found guilty. We decline to fashion such a rule.
 
 
 32
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3