956 F.2d 1169
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pablo REYES-PEREZ, Defendant-Appellant.
 No. 89-50448.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 6, 1992.
Decided March 11, 1992.
 
 Before POOLE, WIGGINS and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Pablo Reyes-Perez, while an inmate at Lompoc Penitentiary, stabbed and killed a fellow inmate. Appellant was charged with first degree murder under 18 U.S.C. § 1111, but was convicted by a jury of the lesser included offense of voluntary manslaughter. He was also convicted of possessing contraband in prison in violation of 18 U.S.C. § 1791.
 
 
 3
 Reyes-Perez now appeals his conviction, arguing that by the imposition of deadlines to deliberations and the giving of an Allen instruction,[1] the jury was coerced into returning a verdict. We are constrained to agree, and therefore reverse the conviction and remand for a new trial.
 
 I.
 
 4
 Appellant's trial commenced on April 25, 1989. Following some two days of testimony and argument, the case was submitted to the jury at 3:15 p.m. on April 26, 1989. The jury deliberated for over eight days, returning its verdict of guilty on the count of possession of contraband in prison on May 8, 1989, and on the homicide count on May 9, 1989.
 
 
 5
 On May 3, the trial judge told the jury that "[n]o one should rush the verdict, but don't dawdle. Move it reasonably, rapido as they say in Italian." On Friday May 5, 1989, the court dismissed one of the sitting jurors, and the deliberations continued with eleven members. Later that day, out of the jury's presence, the court again expressed to counsel its concern about the length of deliberations, observing: "I am of a mind, if they haven't reached a verdict by Tuesday noon, I'm going to declare a mistrial. I think we have been pushing them long enough, and I'm getting tired of it."
 
 
 6
 On Monday May 8, 1989 at 4 p.m., the jury notified the court that they had reached a verdict on the charge of possession of contraband, but that they were deadlocked as to the homicide count. The court, after questioning the jury concerning the deadlock, said:
 
 
 7
 Well, I'm going to put you out one more day, and that will be it. You don't arrive at a verdict by noon tomorrow, I'm going to discharge you all. All right?
 
 
 8
 The next morning, the court again questioned the jury on the possibility of reaching a verdict. After the foreperson had informed the court that it was "hopeless," another member of the jury informed the court that the problem was "a matter of semantics"--a result of disagreement over the definition of malice aforethought. The court then reread the instructions as previously given. The foreperson responded:
 
 
 9
 Your Honor, we have read those instructions at a minimum of 50 times.... And I mean that with all sincerity. Each individual juror has also read them in moments of quiet time by deliberating after hours or before hours, or whenever the opportunity presented itself. So everyone has had ample opportunity to read the instructions.
 
 
 10
 The court continued to probe the source of the deadlock, finally asking: "You can't come in with either guilty or not guilty on murder through first or second degree or manslaughter, voluntary or involuntary. Huh?" The foreperson replied: "The vote is very, very close, sir, but it's not unanimous." The court then gave the jury a modified Allen charge,[2] concluding ominously: "if you haven't reached a verdict by 3:00 o'clock this afternoon, then, that to me, is the end of the line. I just have had it."
 
 
 11
 The jury reached a verdict at 2:59 p.m., finding Reyes-Perez guilty of voluntary manslaughter.
 
 II.
 
 12
 The appellant argues that the Allen charge as given, together with the imposition of a deadline, combined to coerce the jury into returning its guilty verdict. When reviewing objections to an Allen charge, this court analyzes whether the instruction, taken in its context, had a coercive effect. United States v. Wauneka, 842 F.2d 1083, 1088 (9th Cir.1988). In assessing the coerciveness of a supplemental instruction, we look to the form of the instruction, the length of deliberations preceding and following the Allen charge, and other indicia of coercive pressure on the jury. United States v. Foster, 711 F.2d 871, 884 (9th Cir.1983), cert. denied, 465 U.S. 1103 (1984).
 
 
 13
 The form of the charge given in this case was deficient in at least two important respects. First, in light of the inherent coerciveness of the Allen charge, we have held it essential that the instruction be accompanied by ameliorative language reminding jurors of their obligation not to surrender "conscientiously held beliefs simply to secure a verdict for either party." United States v. Mason, 658 F.2d 1263, 1268 (9th Cir.1981). Without such a reminder, the risk becomes intolerable that the jury instructions will unduly "limit the scope of the jury's legitimate function." Gerald Torres & Donald P. Brewster, Judges and Juries, 4 Law & Ineq.J. 171, 180 (1986).
 
 
 14
 Second, the inclusion of a deadline in the instruction impermissibly heightened the pressure on the jury. In upholding the giving of an Allen charge, we have previously emphasized the balancing fact that the judge, in giving the instruction, imposed no deadline or time limits on the return of a verdict. See e.g. United States v. Hooten, 662 F.2d 628, 637 (9th Cir.1981), cert. denied, 455 U.S. 1004 (1982). We find the conclusion inescapable in the present situation that an Allen instruction given in conjunction with a deadline to jury deliberations is impermissibly coercive, requiring reversal of a subsequent conviction. Jurors pressured to reconsider their views must at least be afforded the opportunity to do so thoughtfully and carefully, without the constraints of time limits or threats that they will be dismissed without having completed their function. In so holding, we follow the reasoning implicit in prior precedents, which have long held that an Allen charge, even without the added duress of a deadline, may already approach the "brink of impermissible coercion." United States v. Seawell, 550 F.2d 1159, 1163 (9th Cir.1977).
 
 
 15
 This case illustrates the necessity of such a rule. Here, the defense had conceded at trial that Reyes-Perez was in possession of contraband and had killed his fellow inmate. Thus, the only issues needing to be decided by the jury were whether appellant killed in self-defense, and if not, the degree of guilt. Nevertheless, at the end of over seven days of deliberation, the jury found itself 'hopelessly' deadlocked. Only hours later, and one minute before the court imposed deadline, however, the jury returned a verdict of guilty.[3]
 
 
 16
 The government argues in the alternative that even if the jury was coerced, the error was harmless since appellant was convicted of voluntary manslaughter rather than first degree murder as charged. Even assuming that harmless error analysis can apply,[4] coercing a jury verdict is an error of constitutional dimension, in the face of which the government bears the burden of proving its harmlessness beyond a reasonable doubt. Coleman v. McCormick, 874 F.2d 1280, 1288 (9th Cir.), cert. denied, 493 U.S. 944 (1989). The government made no such showing. We do not know whether, given more time to deliberate, the jury would not have convicted appellant of involuntary manslaughter, or perhaps that they might even have acquitted him altogether.
 
 III.
 
 17
 Reyes-Perez has also alleged error in the government's use of its peremptory challenges to strike African-American jurors from the jury panel. Since we reverse on the grounds discussed above, we need not address this claim at this time.
 
 
 18
 The judgment is REVERSED and the case is REMANDED for a new trial.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See Allen v. United States, 164 U.S. 492 (1896)
 
 
 [2]
 The court said:
 Well, I'll tell you what I am going to do: I am going to send you out and because this is an important case, not only to the government but to the defendant, there is no assurance of finding a better jury than you all are.
 I am convinced you worked very hard at it and I encourage you to sit down and see if you cannot agree with one another on one or the other of the remaining charges....
 
 
 [3]
 The government argues in their brief that under United States v. Bonam, 772 F.2d 1449, 1451 (9th Cir.1985), "it is only when a verdict is reached immediately after the Allen charge is given to the jury that courts find the instruction to be coercive." This is a misreading of Bonam, which merely observed that "[a] jury verdict reached immediately after an Allen charge can be an indication of coercion." Id. at 1451 (emphasis supplied)
 
 
 [4]
 The right to have a jury deliberating free of unduly coercive influences is arguably one of those "constitutional rights so basic to a fair trial that [its] infraction can never be treated as harmless error." Chapman v. California, 386 U.S. 18, 23 (1967)