958 F.2d 379
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maria MARIN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maria MARIN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Luis Alfredo Avilan BORDA, Defendant-Appellant.
 Nos. 90-50211, 90-50220 and 90-50387.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1992.
Decided March 20, 1992.
 
 Before CANBY, KOZINSKI and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Maria Marin (Marin) appeals her conviction following a jury trial for distribution and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and her conviction pursuant to a guilty plea for conspiracy and possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and § 846. Luis Alfredo Avilan Borda (Borda) appeals his conviction of thirteen counts of narcotics crimes, including conspiracy, distribution, possession with intent to distribute, money laundering, and continuing criminal enterprise. We affirm both convictions.
 
 BACKGROUND FACTS
 
 3
 Marin appeals her conviction following a jury trial in the case of United States v. Paniagua, No. 89-0605 (Paniagua case) and her conviction pursuant to a guilty plea in the case of United States v. Borda, No. 89-0604 (Borda case). The indictment in the Paniagua case charged codefendants Marin, Paniagua, and Valencia with (1) conspiracy to distribute and to possess with the intent to distribute cocaine, in violation of 21 U.S.C. § 846, (2) possession with the intent to distribute 131 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), and (3) distribution of 131 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). The overt acts charged occurred on July 3, 1989 when Marin and Paniagua drove a car to a Canyon Road residence in Costa Mesa, California, loaded the car with cocaine, and exchanged cars with Valencia. Marin was convicted of the possession and distribution counts, but was acquitted of the conspiracy charges. She was sentenced to 188 months in prison.
 
 
 4
 The indictment in the Borda case was brought against codefendants Borda, Garcia, Matias, Ramirez Marin, Suarez, Marsans, Casasus, Karam, Paniagua, and Marin. The indictment alleged various narcotics offenses, conspiracy, continuing criminal enterprise, and money laundering. Marin was only identified as part of the operation that delivered cocaine to Garcia and stored 200 kilograms for later distribution. The overt acts in this second indictment occurred on July 1, 1989 (the delivery) and July 3, 1989 (the storage). Marin pled guilty to conspiracy and possession with intent to distribute 200 kilograms of cocaine. She was sentenced to 121 months to be served concurrently with the sentence imposed in the Paniagua case.
 
 
 5
 Borda was indicted as one of the organizers of a drug ring. He was charged with conspiracy to possess and distribute cocaine; distribution and possession of cocaine; aiding and abetting codefendants Suarez, Marsans, and Casasus in the distribution of and possession of cocaine; aiding and abetting in the laundering of the proceeds of narcotics activities; aiding and abetting Garcia, Paniagua, and Marin in the possession and distribution of cocaine; and continuing a criminal enterprise as an organizer, supervisor, or manager of at least five other people in a series of narcotics violations.
 
 
 6
 The jury began deliberating on February 12, 1990. At first, it was unable to reach a unanimous verdict on two of the counts. The court asked the jury to return the verdicts on which they had unanimously agreed and sealed those verdicts. The court then gave a modified Allen charge. On March 5, 1990 the jury reached a unanimous verdict as to the remaining counts. Borda was convicted of all the charges against him and sentenced to 327 months in prison.
 
 DISCUSSION
 I. Marin
 A. Double Jeopardy
 
 7
 Marin did not raise the issue of double jeopardy in the district court. The general rule is that an issue not raised in the district court will not be considered on appeal, absent exceptional circumstances, a pure issue of law, or a change in the law. United States v. Smith, 924 F.2d 889, 893-94 (9th Cir.1991). There may be times when a double jeopardy issue need not be raised in the district court before it is raised on appeal. See United States v. Blocker, 802 F.2d 1102, 1103-04 (9th Cir.1986) (no need to raise duplicitous indictment issue pre-plea in order to attack a duplicitous sentence). However, those are instances where the defect appears on the face of the indictment. Id.
 
 
 8
 Furthermore, Marin waived her double jeopardy claim by pleading guilty to the conspiracy charged in the second indictment. See United States v. Broce, 488 U.S. 563, 569, 576, 109 S.Ct. 757, 762, 765, 102 L.Ed.2d 927 (1989); United States v. Caperell, 938 F.2d 975, 977 (9th Cir.1991); see also United States v. Montilla, 870 F.2d 549, 552-53 (9th Cir.1989), amended on other grounds, 907 F.2d 115 (9th Cir.1990) (by pleading guilty, defendant waived right to challenge alleged due process violation caused by outrageous government conduct). Marin pled guilty to the conspiracy charged in the Borda trial, even though she had been acquitted of the conspiracy charge in the first trial. We have reviewed the indictments and the record in the Borda case and it is apparent that consideration of her double jeopardy claim requires looking to facts outside the face of the two indictments and the existing record. The indictments and the record by no means demonstrate that the two major drug transactions that Marin engaged in during her five day sojourn in Southern California were part of a single conspiracy. Thus, she waived this issue by pleading guilty. Broce, 488 U.S. at 576, 109 S.Ct. at 765-66.
 
 
 9
 At any rate, contrary to Marin's request, even if her double jeopardy claim were decided in her favor, we would not dismiss the substantive convictions in the first case. We would only dismiss the conspiracy charges in the second one. The substantive charges of which she was found guilty in the Paniagua case are distinct from the conspiracy charges, United States v. Becker, 720 F.2d 1033, 1036 (9th Cir.1983), and would not be encompassed by a conclusion that double jeopardy barred the second conspiracy indictment. Of course, we recognize that this reasoning would not preclude dismissal of the conspiracy charges in the second indictment, but it is the charges in the first indictment that Marin seeks to obliterate.[1]
 
 B. Cocaine Samples at Trial
 
 10
 The government had 10 kilograms from each cocaine seizure at counsel table during the trial. Marin did not object to the presence of the cocaine in the courtroom, although she sought to have the cocaine excluded from evidence. The district court denied that motion. It found that the admission of the evidence was not unduly prejudicial. Given this ruling by the district court, and the presence of other samples of cocaine during the trial, it was not plain error for the court to allow the cocaine to remain in the courtroom. United States v. Gomez-Norena, 908 F.2d 497, 500 (9th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). Marin's claim that it was is without merit.
 
 II. Borda
 A. Hearsay Statements of Investigator
 
 11
 The district court did not abuse its discretion in excluding the investigator's hearsay testimony regarding the statements allegedly made by Rudolpho Olmedo. Federal Rule of Evidence 804(b)(3) does provide a hearsay exception for statements that may subject the declarant to civil or criminal liability when the declarant is unavailable, if corroborating circumstances clearly indicate the trustworthiness of the statement. United States v. Satterfield, 572 F.2d 687, 691 (9th Cir.), cert. denied, 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978). Olmedo's essentially self-serving statements were not of a type that he would not have made unless he believed them to be true. See United States v. Hoyos, 573 F.2d 1111, 1115 (9th Cir.1978). Furthermore, the district court did not err in determining that there were no corroborating circumstances to support the trustworthiness of Olmedo's statements and to militate against the general distrust of third party confessions which are offered to exculpate the accused. Satterfield, 572 F.2d at 692.
 
 
 12
 B. Failure to Grant Defense Witness Immunity
 
 
 13
 Borda claims that the district court erred by failing to conduct an evidentiary hearing to determine whether prosecutorial misconduct in failing to grant use immunity distorted the process and caused Olmedo to refuse to testify. Borda did not request a hearing from the district court and has raised this issue for the first time in his reply brief. We decline to consider it. See Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir.1990).
 
 
 14
 C. Sufficiency of the Evidence--Criminal Enterprise
 
 
 15
 There was ample evidence to support Borda's conviction for engaging in a continuing criminal enterprise. 21 U.S.C. § 848(c). The evidence showed that at least seven people worked for the organization that Borda managed: Ramirez Marin, Suarez, Marsans, Casasus, Karam, Paniagua, and Marin. Borda organized meetings regarding the transportation of large quantities of cocaine into the United States, arranged for attorneys for subordinates who were arrested, arranged for the pick up and delivery of the proceeds of the narcotics trafficking, and maintained records showing approximately five million dollars in receipts from the sale of cocaine.
 
 
 16
 Borda also obtained substantial income or resources from the criminal enterprise. There is no minimum threshold of the amount of money or drugs necessary to establish "substantial income or resources." United States v. Medina, 940 F.2d 1247, 1251 (9th Cir.1991). Circumstantial evidence of large amounts of money or quantities of narcotics can establish the substantial income element. Id.; United States v. Zavala, 839 F.2d 523, 527 (9th Cir.), cert. denied, 488 U.S. 831, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988). Here, the government seized 557 kilograms, which had a wholesale value of $6,684,000. The government also seized $896,580 which Borda had collected in a seven-day period. The drug ledger showing receipts of $4,377,500 also illustrates the substantial income generated by Borda's organization. Thus, there was substantial evidence to convict Borda of engaging in a criminal enterprise.
 
 
 17
 D. Sufficiency of the Evidence--Money Laundering
 
 
 18
 Money laundering occurs when a defendant "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity" with the intent to promote narcotics trafficking, conceal the proceeds, or avoid government reporting requirements. 18 U.S.C. § 1956(a)(1). A "financial transaction" means a transaction involving one or more monetary instruments, which in any way or degree affects interstate or foreign commerce. Id. § 1956(b)(4). The physical movement of money which affects interstate and foreign drug commerce satisfies this statutory definition. Id. § 1956(b)(3), 1956(b)(5)(i).
 
 
 19
 Here, Borda physically transferred the money from one location in California to another location within the same state. This money was destined for Columbia, had it not been intercepted. Codefendant Ramirez Marin had flown out from New York in order to take the money to Columbia. Additionally, this narcotics organization covered New York, Utah, Colorado, and California. Thus, any profit to the organization would have affected both interstate and foreign commerce.
 
 E. Jury Instruction on Criminal Enterprise
 
 20
 When a defendant fails to object to a jury instruction, this court reviews the instruction only for plain error. United States v. Jerome, 942 F.2d 1328, 1331 (9th Cir.1991). Plain error will be found only if an error was highly prejudicial and there was a high probability that the alleged error materially affected the verdict. United States v. Hernandez-Escarsega, 886 F.2d 1560, 1573 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990). Only rarely will an improper jury instruction justify a finding of plain error. Id.
 
 
 21
 The district court commits plain error by failing to give a specific instruction to the jury regarding counting the potential members of a criminal enterprise when there is a possibility of juror confusion and a high probability of prejudice to the defendant. Jerome, 942 F.2d at 1331. This high probability of confusion and prejudice does not exist in Borda's case. First, the court did give a specific instruction that the jury could not count the officers or informant as members of the criminal enterprise. Second, any possible error from the court's failure to exclude people above Borda in the organization from being counted was harmless. See Hernandez-Escarsega, 886 F.2d at 1572-73. There were at least seven subordinates who the jury could easily find would qualify as part of the criminal enterprise: Ramirez Marin, Suarez, Marsans, Casasus, Karam, Paniagua, and Maria Marin. There is nothing to suggest that the jury confusedly reached out and selected people above Borda in the organization. Thus, the absence of the "bosses" jury instruction was not plain error.
 
 F. Allen Charge
 
 22
 The court did not abuse its discretion by giving a modified Allen[2] charge which did not contain any of the coercive elements previously rejected by this court. United States v. Sae-Chua, 725 F.2d 530 (9th Cir.1984) (giving of Allen charge coercive when jury informs court there is only one holdout juror refusing to vote guilty); United States v. Seawell, 550 F.2d 1159 (9th Cir.1977) (repetition of Allen charge after second jury deadlock is coercive); see United States v. Wauneka, 842 F.2d 1083, 1088-89 (9th Cir.1988) (Allen charge upheld where jury deliberated eleven hours before the charge and a short time after it). Here there simply is no indication that the charge had a coercive effect on this jury, which deliberated for many days after the charge was given. See Wauneka, 842 F.2d at 1088.
 
 G. Admission of Drug Ledger into Evidence
 
 23
 Borda, finally, claims that the district court erred when it received a drug ledger into evidence as a party admission. Fed.R.Evid. 801(d)(2). The drug ledger was found in Borda's safety deposit box. A handwriting expert testified that the ledger handwriting matched the handwriting on documents found in Borda's house, including Borda's checkbook, an address book, lists of names and numbers of co-conspirators, and documents found on Borda at the time of his arrest. The court's finding of authorship may be based entirely on circumstantial evidence. See United States v. Schmit, 881 F.2d 608, 613-14, 614 n. 7 (9th Cir.1989). There was plenty of evidence here. Therefore, it was not an abuse of discretion to admit the ledger into evidence.
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Marin asks us to exercise a "supervisory power" to dismiss the first indictment, but we have no such power in this case. See United States v. Simpson, 927 F.2d 1088, 1090-91 (9th Cir.1991)
 
 
 [2]
 See Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896)